**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**TIMOTHY J. VRANA**
Timothy J Vrana LLC
Columbus, Indiana

ATTORNEY FOR APPELLEE:

**LANDYN K. HARMON**
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|                          |   |                       |
|--------------------------|---|-----------------------|
| H.H.,                    | ) |                       |
|                          | ) |                       |
| Appellant-Petitioner,    | ) |                       |
|                          | ) |                       |
| vs.                      | ) | No. 03A01-1308-DR-354 |
|                          | ) |                       |
| A.A.,                    | ) |                       |
|                          | ) |                       |
| Appellee-Respondent.     | ) |                       |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Timothy B. Day, Special Judge
Cause No. 03D02-1206-DR-2868

**February 5, 2014**

**OPINION- FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Petitioner H.H. ("Mother") filed a notice of intent to relocate from Bartholomew County to Hawaii with G.A. (the "Child"). Appellee-Respondent A.A. ("Father") objected to the relocation of the Child. The trial court denied Mother's request to relocate with the Child following an evidentiary hearing. Mother appeals. Upon review, we conclude that Mother has shown a good faith and legitimate reason for proposing the relocation, but that the trial court did not clearly err in finding that relocation was not in the Child's best interests. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father were previously married. They separated in 2005, and subsequently divorced. Mother was pregnant when she and Father separated. The Child was born on January 21, 2006. Father has been exercising parenting time with the Child since the Child was a baby.

In May of 2008, Mother married J.H. Father remarried in December of 2010. Father's wife, K.A., has four children from a previous relationship. She and Father also have two children together.

In light of her desire to move with the Child to Hawaii, Mother filed a Notice of Intent to Relocate on April 18, 2012. Father objected to the relocation. On July 18, 2012, the trial court conducted an evidentiary hearing on Mother's request to relocate. Following the conclusion of the July 18, 2012 hearing, the trial court issued an order denying Mother's request to relocate with the Child to Hawaii.

2

At some point after Mother's first relocation request was denied, J.H. accepted employment in and moved to Hawaii. J.H. subsequently admitted that he had accepted the employment in Hawaii before the hearing on Mother's first relocation request.

On April 22, 2013, Mother filed a second Notice of Intent to Relocate. Mother also filed a request for a change of trial judge. Mother's request was granted, and, on May 6, 2013, the trial court assumed jurisdiction over the instant matter. On May 7, 2013, Father objected to the proposed relocation. On June 28, 2013, the trial court conducted an evidentiary hearing on Mother's request to relocate.

At the time of the evidentiary hearing, Father was exercising overnight, holiday, and summer visitation pursuant to the Indiana Parenting Time Guidelines. Father was employed by a Ray Skillman car dealership in Indianapolis. K.A. was employed by Magic Touch Cleaning Service, cleaning numerous houses in Greenwood. Father and K.A. lived and resided in Martinsville. Mother was employed as a nurse in Columbus. She lived with the Child in Columbus. J.H. was employed as a government contractor working on the Pacific Missile Range in Hawaii. Mother indicated that if permitted to move with the Child to Hawaii, she intended to open a health clinic and work as a certified nurse practitioner. Mother had created a business plan for this venture but had not yet initiated any steps to secure funding. Mother acknowledged that she did not believe this business venture would make a profit for a number of years.

On July 12, 2013, the trial court entered an order denying Mother's request to relocate. The trial court's order provided that custody of the Child would be granted to Father if

3

Mother chose to relocate to Hawaii. This appeal follows.

## DISCUSSION AND DECISION

### I. Mother's Request to Relocate

Mother contends that the trial court erred in denying her request to relocate to Hawaii with the Child.

### A. Standard of Review

Although neither party requested specific findings of facts and conclusions thereon pursuant to Indiana Trial Rule 52(A), the trial court made numerous findings regarding whether Mother's relocation request was made in good faith and for a legitimate purpose and whether the proposed relocation would be in the Child's best interest. As such, we employ a two-tiered standard of review:

> [W]e must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011) (quoting *M.S. v. C.S.*, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010)).

> We may affirm the trial court on any legal theory supported by the factual findings even if the trial court used a different legal theory. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998). Before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that our affirmance is consistent with all of the trial court's factual

findings and inferences reasonably drawn therefrom. *Id*. at 924.

> "In addition […], our supreme court has expressed a 'preference for granting latitude and deference to our trial judges in family law matters.'" *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our supreme court has recently re-emphasized this principle, stating that we afford such deference because of trial judges' "unique, direct interactions with the parties face-to-face." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*; *see also Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Therefore, we "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

*Id.* at 783-84.

## B. Denial of Mother's Request to Relocate

Pursuant to Indiana Code section 31-7-2.2-1(a), "[a] relocating individual must file a notice of the intent to move with the clerk of the court that: (1) issued the custody order or parenting time order; or (2) … has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child; and send a copy of the notice to any nonrelocating individual."

> A nonrelocating parent may object to relocation in either of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child. *Baxendale*, 878 N.E.2d at 1256 n.5; *see* Ind. Code § 31-17-2.2-5(a) (regarding motion to prevent relocation). Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child. Ind. Code § 31-17-2.2-5(b). "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-

5

2.2-5(d).

*T.L.*, 950 N.E.2d at 784.

In determining whether to permit a relocation, the trial court shall take into account the following:

(1) The distance involved in the proposed change of residence.
(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time ….
(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time … including consideration of the financial circumstances of the parties.
(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
(5) The reasons provided by the:
    (A) relocating individual for seeking relocation; and
    (B) nonrelocating parent for opposing the relocation of the child.
(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1. "The 'other factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code section 31-17-2-8.[1]" *T.L.*, 950 N.E.2d at 785 (citing *Baxendale*, 878 N.E.2d at 1257).

### 1. Whether Mother's Relocation Request Was Made in Good Faith and For a Legitimate Reason

Mother claims that the trial court erroneously determined that she failed to prove that

---

[1] These factors include: (1) the age and sex of the child; (2) the wishes of the child's parent or parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian. Ind. Code § 31-17-2-8.

her relocation request was made in good faith and for a legitimate reason. Specifically, Mother challenges the trial court's determination that her desire to join J.H., who had already moved, in Hawaii did not present a good faith or legitimate reason for relocation of Mother and the Child from Columbus to Hawaii.

As we noted in *T.L.*, our body of case law has not explicitly set forth the meaning of legitimate and good faith reasons in the relocation context. 950 N.E.2d at 787. However, we observed that "it is common in our society that people move to live near family members, for financial reasons, or to obtain or maintain employment." *Id*. at 787-88. Thus, we inferred that these and similar reasons are what the legislature intended in requiring that relocation be for "legitimate" and "good faith" reasons. *Id*. at 88. We further noted that, as the relocation statute provides and the Indiana Supreme Court has observed, the resolution of relocation disputes ultimately turns on a judicial determination of the best interests of the child, part two of the two-prong standard. *Id*. (citing *Baxendale*, 878 N.E.2d at 1256 n.5). "If part one, the requirement of a legitimate and good faith reason, posed an inordinately high bar for a relocating parent to meet, it could too often prevent trial courts from reaching part two and appropriately deciding the dispute based on the best interests of the affected child." *Id*.

In the instant matter, the trial court concluded that Mother failed to demonstrate that her desire to relocate to Hawaii with the Child was made in good faith and for a legitimate purpose. In making this determination, the trial court found as follows:

> (9) The Court finds no legitimate reason other than personal preference for Mother and her husband to move with [the Child] to the State of Hawaii. Neither Mother or her husband have ever lived in Hawaii prior. Neither has friends or relatives in that State. Neither is required to reside in that State for

employment purposes. Both Mother and her husband were gainfully employed here in Indiana prior to the relocation proceedings being initiated.

(10) The Court has considered Indiana Code 31-17-2.2-5(c) which places the burden upon Mother to prove that her proposed relocation to the State of Hawaii is being made in good faith and for a legitimate reason. The Court has already determined that there is no legitimate reason for Mother's relocation. The Court also determines that the most recent request to relocate filed by Mother is not being done in good faith given the fact that the proposed relocation has already been denied by another judge based upon nearly the same evidence heard at the most recent hearing. The only significant difference between the two hearings is the fact that Mother's present husband decided to move his residence to the State of Hawaii knowing that Mother's request to relocate had been denied. The Court views this as negative to Mother's second relocation petition because Mother's husband has placed his own interests ahead of his wife and her child. This calls into question his commitment to Mother and [the Child] both presently and in the future.

Appellant's App. pp. 15-16.

During the evidentiary hearing, Mother admitted that she had desired to move to Hawaii since she and J.H. had visited Hawaii on their honeymoon. She testified that while she was gainfully employed in Columbus as a nurse, differences in the laws of the State of Indiana and the State of Hawaii would allow her to work in Hawaii in her own clinic as a certified nurse practitioner with more autonomy than she would have in Indiana. In addition, while J.H. admitted that he was making approximately the same salary in Hawaii that he had been making in Columbus, he testified that he was required to work significantly less hours in his employment in Hawaii and that his employment in Hawaii provided health benefits which had not been affordable when he was self-employed in Columbus.

Again, the resolution of relocation requests ultimately turns on a judicial determination regarding the best interests of the children involved. *See T.L.*, 950 N.E.2d at

788. As such, without determining whether the record supports the trial court's statement that it believed that Mother's request to relocate was not made in good faith and her and J.H.'s desire to move to Hawaii was made out of personal preference as opposed to their stated desire to improve both their and the Child's quality of life, we conclude that Mother's stated reason for her request to relocate to Hawaii with the Child, *i.e.*, to live and create a family life with J.H., was sufficient to prove that her request was made in good faith and for a legitimate purpose. *See In re the Paternity of X.A.S.*, 928 N.E.2d 222 (Ind. Ct. App. 2010) (providing that the father presented a good faith and legitimate reason for the proposed reason for relocation, *i.e.*, he had recently married a member of the U.S. Navy whose ship was docked in California, and he wished to relocate to California to live with his new spouse).

In sum, in light of its finding that Mother proposed relocation in order to live with her husband, J.H., who had already relocated to Hawaii, we conclude that the trial court erred in its conclusion that Mother's proposed relocation was not made in good faith and for a legitimate reason. However, our inquiry does not end there because the trial court also determined that relocation was not in the Child's best interests, a determination which we now examine.

## 2. Whether Relocation Was in the Best Interests of the Child

Mother also claims that the trial court erred in determining that the requested relocation was not in the Child's best interests. Specifically, Mother claims that the trial court erroneously determined that relocation was not in the Child's best interests because the

trial court did not make a specific finding relating to each of the factors available for consideration under Indiana Code sections 31-17-2.2-1 and 31-17-2-8. We disagree and state that while the trial court is to consider all relevant factors, the trial is not necessarily required to make specific findings on each factor unless requested to do so by the parties. *See generally, Baxendale*, 878 N.E.2d at 1254 n.2. (upholding the trial court's denial of the mother's request to relocate despite the fact that the trial court did not make any specific findings because the parties had indicated that they did not believe findings and conclusions were necessary).

In determining that the requested relocation was not in the Child's best interests, the trial court found the following:

> It has been established that [the Child] is thriving in her present State of residence. She is able to visit with her Father and grandmother regularly. She attends private school and is receiving good grades. Whether [the Child] will achieve as well at a private school in the State of Hawaii is unknown. [The Child]'s reaction to being separated from her Father, grandmother, and friends is also unknown. The Court is aware that [the Child]'s separation from her stepfather has had a negative impact on her. It only stands to reason that her being separated from nearly everything else she knows will likewise have a negative impact on her. For these reasons, Court finds that Mother's proposed relocation to the State of Hawaii is not in the best interest of [the Child].

Appellant's App. p. 16. The trial court also heard evidence regarding the distance involved in the proposed change of residence; the significant decrease in the regularity with which Father could exercise parenting time; the unlikelihood that the close nature of the relationship between the Child and Father would be preserved if relocation were permitted; the interactions of the Child with her parents, her step-mother, her paternal grandparents, and her step- and half-siblings; and the Child's adjustment to her home, school, and the community;

10

and prior attempts by Mother to thwart Father's exercise of parenting time with the Child. The trial court also heard testimony from two separate social workers regarding the Child's best interests.

When reviewing a determination regarding the best interests of a child for relocation purposes, we "view the evidence in a light most favorable to the trial court's decision and defer to the trial court's weighing of the evidence." *T.L.*, 950 N.E.2d at 788-89. The trial court's findings referred to evidence that the Child has adjusted well to and is thriving in her current environment and questions regarding the feasibility of maintaining the Child's close relationship with Father and paternal grandmother. Upon review, we conclude that the trial court's findings are supported by the evidence in the record. In addition to the evidence relating to the trial court's findings, the trial court heard evidence regarding the other applicable factors relating to the Child's best interests. This evidence also supports the trial court's determination that the proposed relocation to Hawaii was not in the Child's best interests.

### a. Distance Involved Resulting in Increased Costs Associated with Visitation

Again, Mother presented evidence that she intended to relocate from Columbus to Hawaii with the Child. It is uncontested by the parties that Hawaii is a very far distance from Father's home in Martinsville. Father testified that he would not be able to afford to travel to Hawaii to visit with the child. In addition, while Mother testified that she was willing to bear the additional costs associated with transportation to and from visits with Father, the trial court expressed concerns about Mother's ability to pay for said expenses in addition to the

11

increased cost of living in Hawaii in light of J.H.'s wages and the uncertainty surrounding Mother's earning capability over the next few years. This evidence supports the trial court's determination that the proposed relocation was not in the Child's best interests.

### b. Available Parenting Time and the Preservation of the Close Relationship Between the Child and Father

The record indicates that at the time of the hearing, Father was exercising visitation with the Child every other weekend. Father also exercised extended parenting time during the holidays and summer months. In addition, Father exercised some mid-week visitation and spoke with the Child each night via the telephone. Should Mother relocate to Hawaii with the Child, Father's visitation would likely be limited to one week over the Christmas holiday and seven weeks during the summer. This would result in a substantial decrease in the regularity of Father's visitation with the Child as well as the number of days Father is able to exercise parenting time with the Child.

Mother does not dispute that there would be a significant change in the regularity of Father's visitation with Father and reduction in the time that the Child could physically spend with Father if she were permitted to relocate with the Child to Hawaii. Mother merely argues that Father and the Child could preserve their current close relationship by continuing to communicate on a daily basis via telephone.

The record demonstrates that the Child has a close relationship with Father. The Child spends significant amounts of time with Father and talks to Father every night via telephone. Father expressed concern about the effect that the months-long stretches where Father would not have the ability to physically exercise parenting time with the Child would have on their

relationship. The trial court found that uncertainties exist regarding the feasibility of continuing the close relationship with Father if Mother's request to relocate with the Child to Hawaii was granted. The substantial change in the regularity with which the Child could physically spend time with Father, coupled with the uncertainty regarding the feasibility of maintaining a continuing close relationship between the Child and Father supports the trial court's determination that the proposed relocation was not in the Child's best interests.

### c. The Child's Relationships and Interactions with Family Members

The record also demonstrates that in addition to a close bond with her parents and step-father, the Child also has a close bond with her step-mother, step- and half-siblings, and her paternal grandparents. The Child's step- and half-siblings live with Father and step-mother in Martinsville. Paternal grandparents also live in Martinsville. The Child appears to benefit from each of these relationships as she is a happy, well-adjusted, and thriving child. The record clearly demonstrates that both parents, each step-parent, and paternal grandparents love the Child and have played significant roles in her care and development. It is also undisputed that neither Mother nor Father have any extended family living in Hawaii. This evidence supports the trial court's determination that the proposed relocation was not in the Child's best interests.

### d. Child's Adjustment to Home, School, and Community

The trial court also heard evidence that the Child had adjusted well and was thriving in her current school and had many friends. This evidence supports the trial court's determination that the proposed relocation was not in the Child's best interests

13

### e. Recommendations of Social Workers

The parties presented conflicting opinions from two different social workers who had met with the Child. Cassie Fox, the social worker chosen by Mother, indicated that she believed that relocation to Hawaii was in the Child's best interests, while Megan Larson, the social worker chosen by Father, indicated that she believed that relocation was not in the Child's best interests. Fox based her determination on her belief that the Child wanted to relocate to Hawaii. Larson based her determination on her belief that the Child had a close relationship with Father and Father's family. The parties concede that the trial court was not bound to follow the recommendation of either social worker. In addition, in considering Fox's and Larson's testimony, the trial court, acting as the trier-of-fact, was free to believe or disbelieve each witness's testimony and to weigh said testimony accordingly. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *Hubble v. State*, 260 Ind. 655, 660, 299 N.E.2d 612, 615 (1973). The trial court heard evidence which supports its determination that the proposed relocation was not in the Child's best interests.

### f. Mother's Prior Attempt to Thwart Father's Exercise of Parenting Time With the Child

In addition, while Mother claims that she has never attempted to thwart Father's contact with the Child, the trial court heard evidence to the contrary. The trial court heard evidence that Mother had previously been found in contempt for a prior refusal to allow Father to exercise parenting time with the Child. This evidence supports the trial court's determination that the proposed relocation was not in the Child's best interests.

### g. Trial Court's Determination Regarding the Child's Best Interests

Based upon our review of the record, the trial court's determination is supported by ample evidence in the record relating to the Child's best interests. Mother's challenge effectively amounts to an invitation for this court to reweigh the evidence presented by the parties, an invitation which we decline. *See T.L.*, 950 N.E.2d at 789. As such, we conclude that the trial court did not err in determining that the requested relocation was not in the Child's best interests.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.