## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2017, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Elizabeth A. Deckard
Bloom Gates Shipman & Whiteleather, LLP
Columbia City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jill I. Lane, <br> *Appellant-Defendant,* <br><br> v. <br><br> Michael P. Lane, <br> *Appellee-Plaintiff.* | August 24, 2017 <br><br> Court of Appeals Case No. 92A03-1702-DR-399 <br><br> Appeal from the Whitley Circuit Court <br><br> The Honorable Matthew Rentschler, Judge <br><br> Trial Court Cause No. 92C01-1603-DR-123 |

**Bradford, Judge.**

# Case Summary

Appellant-Petitioner Jill I. Lane ("Mother") and Appellee-Respondent Michael Lane ("Father") are the parents of minor child G.M.R.L. Mother filed a notice of intent to relocate from Indiana to Connecticut with G.M.R.L. in July of 2016. The trial court denied Mother's request to relocate with the child following an evidentiary hearing. Mother argues that the trial court's findings of fact, conclusions of law, and order are clearly erroneous. Upon review, we conclude that the trial court did not clearly err in finding that relocation was not in the child's best interest. Accordingly, we affirm.

# Facts and Procedural History

Mother and Father were married on June 13, 2009. Mother and Father have one child together, G.M.R.L., who was born on July 22, 2010. The couple separated in January of 2016 and filed a petition for dissolution in March of 2016. On May 16, 2016, the trial court dissolved the parties' marriage by Decree of Dissolution approving the parties' Settlement Agreement. Pursuant to the order, Mother and Father received joint legal custody of G.M.R.L. with Mother being the primary custodial parent. Father received parenting time with G.M.R.L. pursuant to the Indiana Parenting Time Guidelines.

On July 15, 2016, Mother filed a notice of intent to relocate to Winsted, Connecticut. Father filed his objection to Mother's relocation request, an emergency request for a temporary restraining order, and a motion for

modification of custody on July 19, 2016. That same day, the trial court entered a temporary restraining order restraining the relocation of G.M.R.L. and set the matter for hearing on August 3, 2016. On August 1, 2016, the parties filed a joint stipulation to vacate the August 3, 2016, hearing and reset the hearing for November 9, 2016. On November 9, 2016, the trial court rescheduled the hearing to January 11, 2017.

[4] On January 11, 2017, a hearing was held on all pending motions. Mother filed a trial brief in support of her position, and Father filed a motion for findings of fact and conclusions of law. At the conclusion of the hearing, the trial court ordered the parties to submit a proposed order regarding findings of fact and conclusions of law.

[5] On January 27, 2017, the trial court issued its order with findings of fact and conclusions of law on Mother's petition to relocate. The order included the following findings of fact:

> 4. Mother seeks to relocate to Connecticut so she can join her fiancé, Jeffery Walker. Mother also cites increased living space and better financial opportunities in Connecticut as reasons for the requested relocation.
>
> 5. Mother and Mr. Walker met on-line in January 2016 while playing a computer game. They met in person for the first time in April 2016, and were engaged in June 2016. Mother and Mr. Walker have a tentative wedding date in, June 2017.
>
> 6. Mother and [G.M.R.L.] live alone in their current home which has, at times, housed as many as three (3) other people living with Mother and [G.M.R.L.].

7. Mother has not undertaken any efforts to look for homes with more living space in Whitley County, or the surrounding area.

8. Mother has obtained a position with Northwest CT Realty in Connecticut and has been promised commission of 65% at this new job compared to 60% with her current employer, Orizon Real Estate in Columbia City, Indiana. Because the cost of living is higher in Connecticut, home prices are higher there than in Columbia City, Indiana. Mother speculates that she will have a higher income in Connecticut.

9. Mother has no client base in Connecticut and no ties to the area excepting Mr. Walker. Mother presented no evidence that she has sought or been unable to find better employment terms in Indiana.

10. Mr. Walker lives in Winsted, Connecticut and is employed as an electrician with Horton Electrical Services, LLC in Canton, Connecticut. He is a life-long Connecticut resident.

11. Mr. Walker is opening his home to Mother and [G.M.R.L.]. The home is sufficiently spacious to accommodate Mother and [G.M.R.L.]. Mother considers Mr. Walker's home an upgrade from her Columbia City home.

12. Mr. Walker has no minor children in Connecticut and testified that he will not relocate to Indiana because he expects an accompanying pay decrease. Mr. Walker's gross income was $58,747.28 in 2015. After brief inquiry into Indiana job prospects, Mr. Walker remains under the impression that he would receive an inferior salary for an Indiana job similar to his job in Connecticut.

13. Mother and [G.M.R.L.] have no family in Connecticut, but have become acquainted with some of Mr. Walker's Connecticut friends.

14. Mother testified that she will not relocate if the Court does not permit [G.M.R.L.] to relocate. There is uncertainty about

the logistics of Mother and Mr. Walker's relationship if Mother does not move to Connecticut.

15. [G.M.R.L.] is presently enrolled in first grade at Little Turtle Elementary School in Columbia City, Indiana and is doing well in school.

16. [G.M.R.L.] has special needs. He has been diagnosed with Severe Receptive Delay, Severe Expressive Language Delay, and Autism Spectrum Disorder. Both Mother and Father are cognizant of these needs and provide loving and appropriate care. [G.M.R.L.] participated in services with First Steps and Functional Oral and Motor Feeding Concepts LLC in Fort Wayne in the past. He is not receiving services at this time. Father has taken steps to have [G.M.R.L.] evaluated with Hopebridge in Fort Wayne, Indiana.

17. Winsted, Connecticut is over 700 miles and an approximate 11 hour drive from Columbia City, Indiana.

18. Father opposes [G.M.R.L.'s] relocation because he would lose regular contact with him, as would both sets of grandparents, and other relatives on both sides of the family. Mother's family and Father's family reside primarily in Indiana. [G.M.R.L.'s] half-brother is attending college at Trine University, in Indiana. Father has the ability and desire to have primary physical custody of [G.M.R.L.] if [G.M.R.L.'s] relocation to Connecticut is the alternative.

19. Father will experience hardship and expense to exercise parenting time with [G.M.R.L.] should relocation be granted. Mother proposed that Father exercise parenting time with [G.M.R.L.] for approximately seven weeks each summer, one week of parenting time each Christmas Break, and every Spring Break, as well as one weekend every quarter. Mother has requested that Mother and Father share transportation costs equally for all parenting time with Father, except the one weekend per quarter for which Mother will be responsible.

20. Mother's plan would cause [G.M.R.L.] and his Father and the rest of [G.M.R.L.'s] Indiana family to be physically apart for lengthy stretches of time. Skype or Facetime contact is possible during these absences, but is not a substitute for physical presence.

21. Father would be required to incur considerable costs in providing for any of the transportation expenses to exercise his parenting time with [G.M.R.L.].

22. Father currently resides with his mother ([G.M.R.L.'s] grandmother), Rachel Lane. Rachel assists Father in providing care for [G.M.R.L.], and has cared for [G.M.R.L.] when Mother had work obligations when [G.M.R.L.] was in her care.

23. Father's family members testified that the family consistently spends time together throughout the year, with [G.M.R.L.] spending time with his Father's side of the family approximately twice per month, and not just during the summer and holidays. In contrast, Mother's parents travel and would see [G.M.R.L.] just as frequently if he were based in Connecticut or Indiana.

Appellant's App. Vol II. pp. 27-29. The trial court denied Mother's motion to relocate G.M.R.L. to Winsted, Connecticut, ordered the parties to continue with joint legal custody, did not modify Father's parenting time with G.M.R.L., and did not award either party attorney fees.

# Discussion and Decision

[6] Mother argues that the trial court's findings of fact, conclusions of law, and order were clearly erroneous and not supported by the evidence. We note at the outset that because there was a request for the trial court to enter findings of

fact and conclusions of law, we must determine whether the trial court's findings are sufficient to support the judgment. *Breeden v. Breeden*, 678 N.E.2d 423, 425 (Ind. Ct. App. 1997).

> In reviewing the judgment, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The judgment will be reversed only when clearly erroneous, *i.e.*, when the judgment is unsupported by the findings of fact and conclusions entered on the findings. Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility.

*Id*. (citations omitted).

[7]     "In addition [...], our supreme court has expressed a 'preference for granting latitude and deference to our trial judges in family law matters.'" *In re Paternity of Ba.S.*, 911 N.E.2d 1252, 1254 (Ind. Ct. App. 2009) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). "Our supreme court [emphasized] this principle, stating that we afford such deference because of trial judges' 'unique, direct interactions with the parties face-to-face.'" *H.H. v. A.A.*, 3 N.E.3d 30, 34 (Ind. Ct. App. 2014) (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind.2011)). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id*. Consequently,

we "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008).

## I.   Denial of Mother's Request to Relocate

[8]   Pursuant to Indiana Code section 31-17-2.2-1(a),

> [a] relocating individual must file a notice of the intent to move with the clerk of the court that:  (1) issued the custody order or parenting time order; or (2) ... has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child; and send a copy of the notice to any nonrelocating individual.

> A nonrelocating parent may object to relocation in either of two ways: by filing a motion to modify the custody order or by filing, within sixty days of receipt of the notice, a motion to prevent relocation of the child.  *Baxendale*, 878 N.E.2d at 1256 n.5; *see* Ind. Code § 31-17-2.2-5(a) (regarding motion to prevent relocation). Upon request of either party, the trial court shall hold a full evidentiary hearing to grant or deny a motion to prevent relocation of the child.  Ind. Code § 31-17-2.2-5(b).  "The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c).  If the relocating parent meets that burden, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child."  Ind. Code § 31-17-2.2-5(d).

*T.L. v. J.L.*, 950 N.E.2d 779, 783 (Ind. Ct. App. 2011) (quoting *M.S. v. C.S.*, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010).

In determining whether to permit a relocation, the trial court shall take into account the following:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time....
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time ... including consideration of the financial circumstances of the parties.
>
> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.
>
> (5) The reasons provided by the:
>
>> (A) relocating individual for seeking relocation; and
>>
>> (B) nonrelocating parent for opposing the relocation of the child.
>
> (6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1. "The 'other factors affecting the best interest of the child' include, by implication, the factors set forth for custody determinations and modifications under Indiana Code section 31-17-2-8." *T.L.*, 950 N.E.2d at 785 (citing *Baxendale*, 878 N.E.2d at 1257). These factors include:

> (1) the age and sex of the child; (2) the wishes of the child's parent or parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least

fourteen (14) years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian.

Ind. Code § 31-17-2-8.

Mother claims that the trial court erroneously determined that she failed to prove that her relocation request was made for a legitimate reason. Specifically, Mother challenges the trial court's determination that her desire to move to Connecticut to join her fiancé, move into his home, and work at a realty company did not constitute legitimate reasons for relocation of Mother and G.M.R.L. from Indiana to Connecticut.

Even assuming, arguendo, that Mother did have a legitimate reason for requesting to relocate with G.M.R.L., it was not clearly erroneous for the trial court to conclude that relocation was not in the child's best interest. With regards to the best interest of the child, the trial court found that:

> 4. Even if this Court were to declare that Mother was relocating for a reason that had legitimacy, the court would be constrained to act in the best interests of the child. It is in [G.M.R.L.]'s best interest to remain in Indiana where he has regular contact with both parents and his extended family, and to continue attending Little Turtle Elementary School where he is doing well.

Appellant's App. p. 31. In addition,

16. [G.M.R.L.] has special needs. He has been diagnosed with Severe Receptive Delay, Severe Expressive Language Delay, and Autism Spectrum Disorder. Both Mother and Father are cognizant of these needs and provide loving and appropriate care. [G.M.R.L.] participated in services with First Steps and Functional Oral and Motor Feeding Concepts LLC in Fort Wayne in the past. He is not receiving services at this time. Father has taken steps to have [G.M.R.L.] evaluated with Hopebridge in Fort Wayne, Indiana.

Appellant's App. p. 28. G.M.R.L. has also received services and testing from Riley Children's hospital in Indianapolis, Indiana. Tr. p. 17. Furthermore, due to his special needs, routine and structure are important. Tr. p. 20. "He doesn't like it when things are . . . changed too much." Tr. p. 20. According to Mother, "it's definitely a big priority to make sure he knows [what is] going on and to keep it the same for him." Tr. p. 20. Given G.M.R.L.'s special needs, his relationship with Father and Father's family, his need for routine and structure, his school, and his medical providers, the trial court was not clearly erroneous when it concluded that remaining in Indiana was in G.M.R.L.'s best interest. Mother's claim that the trial court should have given more weight to other various facts is merely an invitation to reweigh the evidence which we will not do. *See Breeden v. Breeden*, 678 N.E.2d at 425.

[12] The judgment of the trial court is affirmed.

Brown, J., and Pyle, J., concur.