## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 01 2019, 6:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Ciyou
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Jonathan R. Deenik
Deenik Lowe, LLC
Greenwood, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

S.A.W.,

*Appellant-Petitioner,*

v.

K.L.W.,

*Appellee-Respondent.*

October 1, 2019

Court of Appeals Case No.
19A-DR-1002

Appeal from the Henry Circuit
Court

The Honorable Bob A. Witham,
Judge

Trial Court Cause No.
33C01-1510-DR-214

**Bailey, Judge.**

# Case Summary

Scott Weaver ("Father") appeals the trial court order, following an evidentiary hearing, granting Kelli L. Weaver's ("Mother") request to relocate with their child, L.W. ("Child"), and denying Father's motion to modify child custody, parenting time, and child support. Father raises two issues which we consolidate and restate as whether the trial court clearly erred by granting Mother's request to relocate with Child and denying Father's motion to modify custody without sufficient evidence on all relevant statutory factors.

We affirm.

# Facts and Procedural History

The parties were married on July 15, 2006, and Child was born on March 10, 2011. On October 19, 2015, Father filed a petition for dissolution of marriage. The parties entered into a settlement agreement which was approved by the trial court and incorporated into a decree of dissolution on September 27, 2016. Under the agreed settlement, the parties shared joint legal custody of Child, Mother had physical custody of Child, and Father had parenting time as the parties agreed or no less than every Tuesday and Thursday evening for four hours and every other weekend. Both parties resided in Henry County, Indiana.

On March 12, 2018, Mother filed her notice of intent to move residence in which she gave notice to Father and the trial court that she intended to move

with Child on or around June 2018 to Putnam or Clay County, Indiana. The notice stated "[t]he reason for the permanent relocation include[s] better job opportunities for myself and my fiancé." App. Vol. II at 62. The notice further stated that Mother would "make every effort to keep up on the current parenting time but the distance and time in school may affect the parenting time." *Id.* Mother further indicated she was "willing to go a minimum of half the distance of driving and meet at a prearranged location." *Id.*

On May 4, 2018, Father filed his objection to Mother's relocation with Child and a motion to modify custody, parenting time, and child support. Father also sought an order enjoining the parties from moving Child pending a decision of the court, and, on May 7, the court granted that motion and referred the matter to mediation.

On May 17, Mother filed an amended notice of intent to move residence in which she informed the Court that she would be relocating to an address in Cloverdale, Putnam County, on June 15, 2018. Mother stated the reasons for relocation were that "she is engaged, planning to get remarried, graduating from college[,] and has job opportunities [near the new location] that far exceed the opportunities that exist in the current area [where she lives]." *Id.* at 74. Mother also stated that "the minor child needs additional support in school which can better be supplied by the school district in which Mother plans to relocate." *Id.* at 74-75. On May 18, Father filed his amended objection to relocation and motion to modify custody, parenting time, and child support.

[7]     On June 13, 2018, the parties filed their "Agreed Entry Regarding [Mother's] Temporary Relocation," in which they agreed Mother could relocate herself and Child to an address in Knightstown, Henry County, in June of 2018, and Father's parenting time would remain unchanged, "pending a full evidentiary hearing in this matter on her relocation." *Id*. at 5, 81. The trial court approved the Agreed Entry on the same date.

[8]     On December 11, 2018, following an unsuccessful mediation, the trial court held an evidentiary hearing on the pending motions. At the hearing, Mother testified that she and Child still lived in Henry County, and Child still attended Tri Elementary, the Henry County school he had always attended. Mother testified she and Child spent the night at her fiancé's house in Cloverdale every other weekend. However, Mother testified she wished to move with Child to Cloverdale in Putnam County because her fiancé lives there, her parents and siblings live close to there, and her and her fiancé's job opportunities are better there. Specifically as to the latter reason, Mother testified that, since she had obtained her Bachelor's degree in healthcare administration in May, she was now "eligible for a promotion as a practice manager or an executive director position" in her field "in the Cloverdale area." Tr. at 7-8. Mother testified that the "promotion" position would pay "[c]lose to forty-five thousand dollars a year," but she had been unable to find such a high paying similar position in the Henry County area. *Id*. at 8. Mother was applying for jobs near Cloverdale. *Id*. at 42, 44. Mother also testified that her fiancé was making ten dollars an

hour more at his job near Cloverdale than at the job he had previously held in Henry County.

[9] Mother testified that Child's Henry County school "labeled him as autistic" based on some behavioral issues, and Child has had an Individualized Education Plan (IEP) since he was in kindergarten. *Id.* at 16. Child's IEP entitles him to "extra services" at school. *Id.* Mother testified that Central Elementary, the school Child would attend in Putnam County, is able to provide Child services pursuant to his IEP. Mother also admitted into evidence, without objection, documents from the Indiana Department of Education stating that Central Elementary school had a "grade" from the State of "B," while Tri Elementary had a "grade" of "D." *Id.* at 23-24; Ex. at 110-114.

[10] Mother testified that Child does not have many friends at his school in Henry County, but he could have opportunities to regularly interact with his cousins—with whom he is "close"—if he lived in Cloverdale. *Id.* at 34. Mother also testified that if Child was living in Cloverdale, he would be closer to "Brain Balance," a program that helps Child with "processing … what is going on." *Id.* at 13. Mother testified that Child's "emotional level" and behavior has improved since he has been attending sessions at Brain Balance, but that program is not located near Henry County. *Id.* at 19.

[11] Mother testified that Cloverdale is one and a half hours' drive from where Father lives in Henry County, and that she would be willing to meet Father half

way in between their homes to facilitate Father's weekend parenting times. She testified that she would be willing to take Child one way to Father in Henry County on his weekday parenting time. Father testified that the only basis for his request to modify custody was Mother's relocation, but that he and Mother had worked well and flexibly together regarding parenting time in the past. Father further testified that he did not believe Mother, by relocating, "malicious[ly] inten[ded]" to minimize his parenting time with Child. *Id.* at 122. We will provide additional facts as necessary.

[12] On April 5, 2019, the court issued its order granting Mother's request to relocate with Child at the conclusion of the 2018-19 school year and ordering that Mother continued to have primary physical custody and Father continued to have parenting time "as the parties can agree." *Id.* at 8. The court ordered that Father shall have parenting time according to the Indiana Parenting Time Guidelines, Subsection II, subpart D,[1] in the event the parties cannot agree. Father now appeals.

---

[1] Ind. Parenting Time Guideline II (D) provides that "regular parenting time" shall include alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. and one evening per week for a period of up to four hours.

# Discussion and Decision

## Standard of Review

Neither party requested special findings, and the trial court did not make any such findings sua sponte. *See* Ind. Trial Rule 52.[2] When the trial court has not made findings or conclusions, we review its decision as a general judgment and,

> without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence. Judgments in custody matters typically turn on essentially factual determinations and will be set aside only when they are clearly erroneous. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.

*Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008) (citations and quotations omitted); *see also H.H.*, 3 N.E.3d at 37 ("[W]hen reviewing a determination regarding the best interests of a child for relocation purposes, we 'view the evidence in the light most favorable to the trial court's decision and defer to the trial court's weighing of the evidence.'" (quoting *T.L. v. J.L.*, 950 N.E.2d 779, 788–89 (Ind.Ct.App.2011))).

---

[2] Nor was the trial court required to do so. "[W]hile the trial court is to consider all relevant factors [in determining whether relocation is in the Child's best interest], the trial is not necessarily required to make specific findings on each factor unless requested to do so by the parties." *H.H. v. A.A.*, 3 N.E.3d 30, 37 (Ind. Ct. App. 2014); *see also In re Marriage of Harpenau*, 17 N.E.3d 342, 347 n.3 (Ind. Ct. App. 2014) (citation omitted) ("In modifying custody, the trial court is not required to issue special findings unless requested by a party.").

[14] Moreover,

> there is a longstanding policy in our State that appellate courts
> should defer to the determinations of the trial courts in family
> law matters. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We
> accord this deference because trial courts directly interact with
> the parties and are thus in a superior position "to assess
> credibility and character through both factual testimony and
> intuitive discernment." *Id*. Conversely, "appellate courts 'are in
> a poor position to look at a cold transcript of the record[ ] and
> conclude that the trial judge, who saw the witnesses, observed
> their demeanor, and scrutinized their testimony as it came from
> the witness stand, did not properly understand the significance of
> the evidence.'" *D.C.* [*v. J.A.C.*], 977 N.E.2d [951,] 956–57 [(Ind.
> 2012)] (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

*Gold v. Weather*, 14 N.E.3d 836, 841 (Ind. Ct. App. 2014).

## Relocation of Custodial Parent

[15] Indiana Code Sections 31-17-2.2-0.5 through 31-17-2.2-6 govern the proposed

relocation of a custodial parent. A parent intending to relocate with a child

must file notice of that intention, Ind. Code § 31-17-2.2-1, and the

nonrelocating parent must file a response in which he or she may object to the

relocation and file a motion to modify custody, I.C. § 31-17-2.2-1, -5.

Following an objection to relocation and corresponding motion to modify

custody, the relocating parent must prove "that the proposed relocation is made

in good faith and for a legitimate purpose." I.C. § 31-17-2.2-5(c).[3] If the relocating parent meets that burden of proof, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d).[4]

[16] In determining whether to permit relocation of the child or, instead, modify custody, the trial court must take into account the following:

> (1) The distance involved in the proposed change of residence.

> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time....

> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time ... including consideration of the financial circumstances of the parties.

> (4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

> (5) The reasons provided by the:

---

[3] Effective July 1, 2019, this provision is contained in subsection (e) of Indiana Code Section 31-17-2.2-5. P.L. 186-2019, SEC. 14.

[4] Effective July 1, 2019, this provision is contained in subsection (f) of Indiana Code Section 31-17-2.2-5. *Id*.

> (A) relocating individual for seeking relocation; and
>
> (B) nonrelocating parent for opposing the relocation of the child.
>
> (6) Other factors affecting the best interest of the child.

I.C. § 31-17-2.2-1(b). The "other factors affecting the best interest of the child" include those factors set forth for custody determinations and modifications under Indiana Code Section 31-17-2-8.[5] *Baxendale*, 878 N.E.2d at 1257.

*Evidence of Good Faith and Legitimate Reason*

[17] To prove good faith and a legitimate reason for relocation, the relocating parent must "demonstrate an objective basis—that is, more than a mere pretext—for relocating." *Gold*, 14 N.E.3d at 842 (quotation and citation omitted). Good faith and legitimate reasons for relocation include moving to live closer to family members, for financial reasons, and for employment opportunities. *Id.*; *see also, e.g.*, *H.H.*, 3 N.E.3d at 36 (concluding Mother's desire to relocate in order to "live and create a family life with" her current husband was "made in good faith and for a legitimate purpose"); *Gilbert v. Gilbert*, 7 N.E.3d 316, 320-21

---

[5] Those factors include: (1) the age and sex of the child; (2) the wishes of the child's parent or parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age; (4) the interaction and interrelationship of the child with the child's parent or parents, the child's sibling, and any other person who may significantly affect the child's best interests; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) evidence of a pattern of domestic or family violence by either parent; and (8) evidence that the child has been cared for by a de facto custodian. I.C. § 31-17-2-8.

(Ind. Ct. App. 2014) (concluding Mother's desire to relocate with her fiancé to a larger house to accommodate an expanding family and to "a better school district" was "a good faith and legitimate reason for moving"). And, although the trial court must consider the distance of the proposed relocation and the hardships and expense for the nonrelocating parent to exercise parenting time, an inconvenience caused by the relocation—even if it is out of state—does not alone warrant custody modification and denial of the request to relocate. *Fridley v. Fridley*, 748 N.E.2d 939, 941 (Ind. Ct. App. 2001) (citing *Hanks v. Arnold*, 674 N.E.2d 1005, 1007 (Ind. Ct. App. 1996)).

[18]    Here, the evidence established that Mother wished to relocate approximately an hour and a half away from Father's residence for the legitimate purposes of having better job opportunities, moving Child to a better school district, being closer to her family, and consolidating her family with her fiancé's family in one location. There was also substantial evidence that Mother did not have a pattern of attempting to limit Father's contact with Child; rather, Father testified that Mother "work[ed] well" with him and was "flexible" with him regarding parenting time. Tr. at 89. Nor was there any evidence of bad faith on Mother's part; Father testified that he did not believe she wished to relocate in order to limit his parenting time. *Id*. at 122. Thus, the record evidence supported the trial court's conclusion that the request for relocation was made in good faith and for legitimate reasons. Father's contention to the contrary is a request that we reweigh the evidence and substitute our judgment for that of the trial court, which we will not do. *Baxendale*, 878 N.E.2d at 1257-58.

*Evidence of Best Interest of Child*

[19]     As Mother met her burden of proving her wish to move was made in good faith and for legitimate reasons, the burden shifted to Father to prove that the move would not be in Child's best interest. To meet that burden, Father was required to present evidence on each factor enumerated in Indiana Code Section 31-17-2.2-1(b). *Harpenau*, 17 N.E.3d at 347. The driving distance between Father's residence and Mother's proposed new residence was one and a half hours. Mother testified she was willing to drive Child half way between the two locations to facilitate parenting time. And, although the evidence indicated that Father would have to travel forty-five minutes each way to exercise his parenting time, Father presented no evidence that he was unable to do so. The evidence indicates that the hardship and expense caused by the distance of the relocation would not be extreme. I.C. § 31-17-2.2-1(b)(1) and (2); *cf.*, *e.g.*, *H.S. v. S.K.* (*In re paternity of X.A.S.*), 928 N.E.2d 222, 226 (Ind. Ct. App. 2010) (finding, in a case permitting relocation, that hardship and expense caused by relocation were extreme because nonrelocating parent would have to travel by plane and pay for lodging out of state to visit child), *trans denied*.

[20]     Although Father presented evidence indicating that exercising his parenting time would be more inconvenient if Mother relocated, he provided no evidence that he would not be able to preserve his relationship with Child. I.C. § 31-17-2.2-1(b)(3). Rather, the evidence established that—despite the inconvenience of a longer drive time—Father could still have parenting time with Child during the weekdays, every other weekend, and at all other times he had previously

had such time. And the parties do not dispute that Mother's "pattern of conduct" regarding Father's parenting time was to promote contact with Child, rather than thwart it. I.C. § 31-17-2.2-1(b)(4).

[21] As noted above, Mother provided evidence that her reasons for relocating were that she had better job opportunities in the new location, and the new location had a better school district and was closer to her fiancé, her parents, and her siblings and their children. I.C. § 31-17-2.2-1(b)(5)(A). Father presented evidence that he opposed the relocation because it would require him to spend more time in the car to facilitate parenting time and Child would see less of his friends and relatives, such as his half-siblings. I.C. § 31-17-2.2-1(b)(5)(B). However, Father presented no evidence that Child's friends and relatives could not see Child every other weekend at Father's house as they always had or come with Father to see Child during weekdays.

[22] Father also testified that he believed the relocation was not in Child's best interest because he opined that Child would not "fit in very well" at a new school, Tr. at 102, and it would be "too much for [Child]" to break up his current routine, *id*. at 103. However, Father presented no evidence to support those assertions. Rather, the evidence indicated that, if Child relocated, he would attend a good school that could accommodate his needs, and he would have consistent contact with cousins around his age, with whom he was close. The evidence also showed that Child's behavior had improved recently, despite his recent move within Henry County and his alternating weekend stays with Mother and her fiancé's family in Putnam County. Thus, Father did not

present sufficient evidence that his reasons for opposing the relocation supported denial of relocation and modification of custody. I.C. § 31-17-2.2-1(b)(5)(B).

[23] And the record evidence supported the trial court's determination that relocation was otherwise in Child's best interest. I.C. § 31-17-2.2-1(b)(6); I.C. § 31-17-2-8. The evidence indicated that Child, who was age seven, was loved and cared for by both parents, but that Mother was the primary caregiver. Child has a close relationship with his relatives on Father's side, but he is also close with his maternal cousins. Although Child had some behavioral issues, the evidence showed that Mother had obtained treatment for Child at a place close to the proposed new residence and that Child's behavioral issues were improving. Although Child has some special needs at school, the evidence indicated that Child would be relocated in a better school district that could also accommodate his needs. And the evidence indicated that Child was adjusting to recent changes in his routine without additional behavioral problems.

[24] Father failed to carry his burden of proving that relocation was not in Child's best interest. Viewing the evidence in the light most favorable to the judgment, as we must, the evidence supports the trial court's determination that relocation was in Child's best interest. *H.H.*, 3 N.E.3d at 37.

# Conclusion

Considering the evidence favorable to the trial court's judgment and the reasonable inferences flowing therefrom, we hold there was evidence in the record to support the trial court's decision to grant Mother's request to relocate and deny Father's motion to modify custody. Father essentially requests that we reweigh the evidence in his favor, which we cannot do. The judgment of the trial court was not clearly erroneous.

Affirmed.

Najam, J., and May, J., concur.