# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**WALTER R. HAGEDORN II**
Law Office of Walter R. Hagedorn II
Tell City, Indiana

ATTORNEY FOR APPELLEE:

**JAMES G. TYLER**
Tyler Law Office
Tell City, Indiana



FILED
Sep 12 2014, 8:52 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE THE MARRIAGE OF )
TINA M. HARPENAU, )
)
   Appellant-Petitioner, )
)
     and )   No. 62A01-1401-DR-37
)
ROBIN P. HARPENAU, )
)
   Appellee-Respondent. )

APPEAL FROM THE PERRY CIRCUIT COURT
The Honorable Lucy Goffinet, Judge
The Honorable Karen Werner, Magistrate
Cause No. 62C01-1301-DR-44

**September 12, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

When Tina ("Mother") and Robin ("Father") Harpenau were divorced in August 2013, the parties agreed to joint legal custody of the parties' two minor children with Mother to have primary physical custody subject to Father's parenting time. In October 2013, Mother filed a notice of intent to relocate to Scott County; Father filed a petition to modify custody objecting to the move. The trial court found Mother's proposed relocation was made in good faith and for a legitimate reason but that it was not in the best interests of the children. Accordingly, the trial court granted Father's petition to modify, awarding primary physical custody to Father, granting Mother the same parenting time as Father originally had, and ordering Mother to pay child support. Mother appeals, raising two issues for our review: 1) whether the trial court abused its discretion in granting Father's petition to modify; and 2) whether the trial court abused its discretion in modifying child support. Concluding the trial court did not abuse its discretion in modifying custody due to Mother's proposed move or in modifying child support accordingly, we affirm.

## Facts and Procedural History

Mother and Father were married in 2005 and have two children, V., born in 2007, and I., born in 2009. The parties' marriage was dissolved on August 29, 2013, and personal and property issues were settled by a Dissolution of Marriage Settlement Agreement. Relevant to the issues on appeal, the agreement provides:

> 4. CUSTODY OF CHILD AND PROVISIONS FOR SUPPORT. . . .
>    a. [Mother] and [Father] shall have joint legal custody of [the children], with [Mother] being primary physical custodian, subject to [Father's] parenting time. The parenting time schedule with the children shall be as follows: . . . [Father's] parenting time during the children's school

year shall be each week beginning on Friday at 5:00 o'clock P.M. and ending on Sunday at noon. During the children's summer break, [Mother] and [Father] shall switch the parenting time schedule wherein [Mother's] weekly parenting time will be the same as [Father's] was during the school year . . . .

* * *

c. [Mother] intends on relocating her residence to a location in Floyd County, Indiana. [Father] intends on relocating to another residence in Perry County. [Mother] and [Father] both waive any objection to and consent to the first location of each party mentioned herein without filing a Notice of Intent as required by Indiana law. The waiver and consent to the first relocation shall not be construed as a waiver to any subsequent relocation made by the parties and the parties acknowledge that they shall be required to follow Indiana law prior to relocating their residence any time after the first relocation.

d. [Father] shall not be required to pay weekly child support to [Mother] at this time, which is a deviation from the Indiana Child Support Guidelines. [Mother] and [Father] shall each pay one-half of all expenses of the children for extracurricular activities, school fees, books, and lunches and clothes. The payment of these expenses shall be intended to be child support. . . . [Mother] and [Father] each believe it is in the best interests of the children to handle the support of the children in this method at the present time.

Appellant's Appendix at 17-18.

On October 4, 2013, Mother filed a notice of intent to move to a residence in Scott County, Indiana. In her notice, she stated that she "is moving to establish a new residence and cohabit with Mr. Eric J. Payne, who owns the residence to which [she] and children will be moving. The residence is within a closer proximity to [Mother's] place of work than her current residence." Id. at 24. In response, Father filed a petition to modify, objecting to the move and requesting the custody arrangement be modified to grant him primary physical custody of the children with Mother to have appropriate parenting time.

At the hearing on Father's motion, Father testified extensively about his research into the various school districts in and around his home in Perry County, Floyd County,

and Mother's proposed home in Scott County. He had consented in the decree to Mother's move to Floyd County because he believed the schools were good and the driving distances between their homes, work, and schools were reasonable. He objected to her move to Scott County because he believed the schools were inferior to the schools in both Perry and Floyd Counties; his drive time to the children and to their schools would increase; and he had concerns about the level of criminal activity in and around the proposed home and schools in Scott County. There was evidence of numerous family members on both Mother's and Father's side who reside in Perry County, whereas there are no family members in Scott County.[1] At the conclusion of the hearing, the trial court announced that it was granting Father's petition to modify and later issued an order formalizing its decision:

> 1. Pursuant to I.C. § 31-17-2.2-5(c), [Mother] has proved that her proposed relocation to Scott County, Indiana is made in good faith and for a legitimate reason.
> 2. Pursuant to I.C. § 31-17-2.2-5(d), [Father] has met his burden by showing that the proposed relocation is not in the best interests of the children of the parties.
> 3. This lack of best interest for the children is proved by the fact that [Mother] is proposing to relocate to Scott County, Indiana which is one hour and twenty minutes by motor vehicle from [Father's] present residence meaning that [Father] would have to travel one hour and twenty minutes one way in order to exercise parenting time with the children.
> 4. That there has been no evidence shown of the significance and the duration of the relationship that [Mother] has with her boyfriend, Eric Payne, with whom she is to live with in Scott County, Indiana.
> 5. There are no family members of either [Father] or [Mother] present in Scott County, Indiana. There are significant numbers of relatives of both [Father] and [Mother] in Perry County, Indiana.
> 6. When [Mother] moves to Scott County, Indiana and lives with her boyfriend, Eric Payne, she will have no legal interest in the house of Eric Payne so that if she and Eric Payne break up, [Mother] and the children will

---

[1] Mother had not yet moved at the time of the hearing, as her relocation had not been approved by the court.

then be out of living accommodations and [Mother] and the children will then have to find another place to live.

       7. That the proposed move would result in circumstances so substantial and continuing in nature that it is not in the best interests of the children for their custody to be moved with [Mother] to Scott County, Indiana.

       8. Thus, [Father's] Petition to Modify Custody should be granted and that joint custody will continue between [Father] and [Mother] with [Father] to be the primary custodial parent of the two minor children of the parties and [Mother] being the secondary custodial parent . . . . Pursuant to the testimony given, [Mother] will have the same parenting time schedule that [Father] has had since the entry of the Decree of Dissolution of Marriage. . . .

Id. at 6-8.

In addition, at Father's request during the hearing, the trial court took judicial notice of the child support worksheet that was attached to the decree of dissolution. Father testified that the income figures reflected therein had not changed since that time. See Transcript at 21. At the conclusion of the hearing, after granting the modification of custody, the trial court requested a proposed child support worksheet for purposes of modifying the support order to reflect the change of custody. As neither party had prepared one nor did either party offer to do so, the trial court figured child support using the figures from the previous child support worksheet and ordered:

      10. [Mother] shall pay to the Clerk of the Perry Circuit Court the sum of $119.00 per week for child support for the minor children of the parties . . . . The present provision that each party pay one-half of all expenses for the children for extracurricular activities, school fees, books, lunches and clothes is hereby eliminated. A copy of the child support obligation worksheet is attached hereto . . . .

Id. at 9.

Mother now appeals the trial court's modification of custody and child support order.

I. Modification of Custody

A. Standard of Review

"We review custody modifications for abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters." Wilson v. Myers, 997 N.E.2d 338, 340 (Ind. 2013) (quotation omitted). In reviewing the trial court's determination, we neither reweigh evidence nor judge the credibility of witnesses. Joe v. Lebow, 670 N.E.2d 9, 23 (Ind. Ct. App. 1996). We will not substitute our judgment if any evidence or legitimate inferences support the trial court's judgment. Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002).

B. Modification Due to Relocation

When a parent files a notice of intent to relocate, the nonrelocating parent may object by filing a motion to modify custody or to prevent the child's relocation. Ind. Code §§ 31-17-2.2-1(b); 31-17-2.2-5(a). The relocating parent then has the burden of proving that the proposed relocation is made in good faith and for a legitimate reason. Ind. Code § 31-17-2.2-5(c). If the relocating parent meets that burden, the burden then shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child. Ind. Code § 31-17-2.2-5(d). In considering a proposed relocation, the trial court must weigh the following statutory factors:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b). The "[o]ther factors affecting the best interest of the child" include the statutory factors relevant to an initial custody order or modification thereof, such as the child's age and sex; the parents' wishes; the child's wishes; the child's relationship with parents, siblings, and other persons affecting the child's best interests; and the child's adjustment to home, school, and the community. Ind. Code § 31-17-2-8; see also Baxendale v. Raich, 878 N.E.2d 1252, 1257 (Ind. 2008). However, when a parent is relocating, the trial court does not need to find a substantial change in one of those "other factors" before modifying custody. Baxendale, 878 N.E.2d at 1257.

Assuming without deciding that Mother met her burden of proving her proposed move was being made for a good faith and legitimate reason,[2] we focus on the trial court's determination that relocation was not in the children's best interests. The trial court is

_____

[2] The trial court's written order stated no reasons supporting its finding that Mother had proved a good faith and legitimate reason for her proposed move, but in its ruling from the bench, the trial court stated that Mother "has proven that the proposed location is made in good faith and for a legitimate reason . . . she is moving there for her boyfriend . . . it is a little bit closer to her work than she is now . . . ." Tr. at 197. We also note that a move to Scott County would put her residence within the same time zone as her job. A move to Floyd County as contemplated by the decree would have the same effect with respect to distance and time zone.

required to consider all the enumerated factors listed in section 31-17-2.2-1(b), and therefore the parent seeking modification must present evidence on each of those factors. Wolljung v. Sidell, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008). Although the trial court did not make specific findings about each factor,[3] our review of the record shows that there was sufficient evidence of each relevant factor to support the trial court's decision.

Father testified that he lives on a 160 acre property in Perry County that is also home to his parents and his grandmother. Both he and Mother have many relatives in close proximity to Father's home, most within fifteen minutes. The parties' oldest child had already started kindergarten in Perry County, but Father testified he had agreed for Mother to relocate to Floyd County because after researching schools and considering the location of homes and work, "I felt Floyd County you could throw a dart at it. She could live anywhere, be within good distance to her work and split the middle between [my home and her work] and there was [sic] two (2) schools, good school corporations." Tr. at 32. He testified that Mother told him she was moving to Scott County instead to be closer to her work and to get help with the kids from her boyfriend and his family. Father was unimpressed with the Scott County schools and with the area to which she proposed moving. Father introduced maps and provided testimony regarding the various locations at issue showing that both his and Mother's current drives from home to Perry County schools were approximately five minutes; that his drive from home to the proposed Scott County location would be one hour and twenty minutes and from work to the proposed

---

[3] In modifying custody, the trial court is not required to issue special findings unless requested by a party. In re Paternity of J.T., 988 N.E.2d 398, 400 (Ind. Ct. App. 2013).

Scott County location would be approximately one hour and forty-five minutes; and that Mother's drive from work to the Scott County location would be approximately thirty-five minutes. Father conceded Mother's drive to work would be substantially shorter from the Scott County location than it was from Perry County. He also testified that "everything has been worked out between us" with regard to spending time with the children. Tr. at 70. There was evidence that under the current arrangement the children got up very early in order to be taken to the babysitter and accommodate Mother's work schedule, but that they would be able to sleep later in Scott County due to being in the same time zone as Mother's job. However, they would also be able to sleep later if they resided in Perry County. So there was evidence regarding the distance, the possible hardship in exercising parenting time, the feasibility of preserving relationships in Perry County, that there was no history of contact between the parties and the children being thwarted, and the reasons Mother had for moving and Father had for objecting.

With regard to the "other factors affecting the best interest" of the children, the trial court specifically noted that Mother proposed to move in with her boyfriend, Eric Payne.[4] Mother and Payne met through their employment with the same company. Father had met Payne a couple of times at Mother's work functions prior to the separation, and Payne had

---

[4] Mother argues that the trial court's finding that Mother's move to cohabitate with her boyfriend and be in closer proximity to work was made in good faith and for a legitimate purpose is in direct conflict with the trial court's finding that the cohabitation was not in the best interests of the children. A good faith and legitimate move may nonetheless not be in the child's best interests. See, e.g., H.H. v. A.A., 3 N.E.3d 30, 36, 39 (Ind. Ct. App. 2014) (holding trial court erred in finding mother's proposed relocation out-of-state to be with new husband was not made in good faith and for a legitimate reason but that the move was nonetheless not in the child's best interest). We cannot say the trial court's decision that moving to live with her boyfriend in a different county than agreed is both a good faith and legitimate reason for Mother to move and against the best interests of the children is contradictory or against the logic and effect of the facts and circumstances in this case.

accompanied Mother when the children were dropped off one time since the separation. The house Mother proposes to move into is wholly owned by Payne. Mother testified at some length about the house, but with regard to the relationship stated only that she and Payne were serious and that his son and the parties' children got along "really well." Tr. at 167. There was no specific testimony regarding the length of their relationship or the relationship between Payne and the children. There was testimony that Mother had no relatives in Scott County but that Payne did, and she hoped they would help with the children. There was no testimony about how the children got along with Payne's extended family, however. Because Mother intended for the children to be residing in the same house with Payne and was apparently relying on him and his family to provide assistance with the children, the relationships between all these parties are particularly relevant to the children's best interests.

We have previously recognized:

> While we are not able to say that the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

Bettencourt v. Ford, 822 N.E.2d 989, 997 (Ind. Ct. App. 2005) (quoting Kirk, 770 N.E.2d at 307). It is not enough that the evidence might support another conclusion; it must positively require the conclusion advocated by the appellant in order for us to reverse. Kirk, 770 N.E.2d at 307. Our courts have long recognized that the welfare of children is

promoted by affording them permanent residence. Wolljung, 891 N.E.2d at 1111 (quotation omitted).

> [C]hildren will normally prosper and mature . . . under a standard of consistency better than they will otherwise . . . . In the larger sense, then, stability in surroundings, schooling, relationships, authority figures, daily routine, economic circumstances, etc. constitute a substantial determinant in assessing the statutorily enumerated factors relevant to a determination of the best interests of the child.

Kuiper v. Anderson, 634 N.E.2d 556, 558 (Ind. Ct. App. 1994). Here, unlike many cases, stability and permanence is promoted by the change in custody because the dissolution itself and the split custody arrangement is so new. In Father's physical custody, the children are able to stay in a place with which they are familiar, be close to their extended family on both sides, and to continue with their current babysitter and in their current school. The trial court heard the parties' testimony and examined the evidence, ultimately finding that a relocation would be contrary to the children's best interests. Mother essentially asks us to reweigh the evidence, which we cannot do. Joe, 670 N.E.2d at 23. The trial court's decision is supported by the record, and we cannot say it is an abuse of discretion.

## II. Child Support

Mother also contends the trial court erred in calculating child support based upon the unsigned and unverified child support worksheet incorporated by reference into the parties' settlement agreement which was approved in August 2013. The modification of child support orders is governed by Indiana Code section 31-16-8-1, which provides a child support order may be modified "upon a showing of changed circumstances so substantial

and continuing as to make the terms unreasonable . . . ." Ind. Code § 31-16-8-1(a), (b)(1). In reviewing a trial court's modification of child support, we reverse only for an abuse of discretion. Holtzleiter v. Holtzleiter, 944 N.E.2d 502, 505 (Ind. Ct. App. 2011). An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court, including any reasonable inferences. Id.

Mother did not object when Father requested the trial court take judicial notice of the child support worksheet that was attached to the settlement agreement entered only four months earlier. Father testified that the income figures reflected on that worksheet had not substantially changed in the interim. Neither Father nor Mother submitted signed or verified worksheets at the hearing. We have urged trial courts in the exercise of their discretion to require verified child support worksheets in every case. Butterfield v. Constantine, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007). However, in this case, we conclude that Mother's failure to object to the trial court taking judicial notice of the unsigned and unverified worksheet upon which the initial child support amount was figured constituted a waiver of her right to appeal the trial court's order on the grounds that the worksheet the trial court used was unsigned and unverified. See id. (holding that father waived his right to appeal the trial court's child support order on the grounds that mother submitted an unverified worksheet because father also failed to produce a verified worksheet or any relevant evidence, failed to object to mother's lack of a verified worksheet, and tacitly agreed to proceed without a verified worksheet). Waiver notwithstanding, we conclude the trial court acted within its discretion in modifying the child support order due to the change in primary physical custody from Mother to Father. The trial court also acted within

its discretion in figuring the modified child support based upon the previous child support worksheet in light of the fact that so little time had passed since the worksheet had originally been prepared, Father testified that the figures had not changed, and Mother did not submit her own worksheet or otherwise challenge the income figures.

## Conclusion

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in granting Father's petition to modify custody or in modifying the child support order to reflect that change. We therefore affirm the judgment of the trial court.

Affirmed.

BAKER, J., and KIRSCH, J., concur.