## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Jun 05 2019, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cody Cogswell
Cogswell & Associates, LLC
Fishers, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Damon Conner,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Amanda Conner,<br>*Appellee-Respondent.* | June 5, 2019<br><br>Court of Appeals Case No.<br>18A-DR-2193<br><br>Appeal from the Madison Circuit<br>Court<br><br>The Honorable G. George Pancol,<br>Judge<br><br>The Honorable Kevin M. Eads,<br>Magistrate<br><br>Trial Court Cause No.<br>48C02-1406-DR-318 |

**Mathias, Judge.**

[1]     Damon Conner ("Father") appeals the Madison Circuit Court's order

modifying custody of his minor child and granting Amanda Conner's

("Mother") request to relocate. Father also appeals the trial court's order concerning the tax exemption for the parties' minor child.

[2] We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] Mother and Father's marriage was dissolved in 2016, and the parties have one child, eight-year-old D.C. The parties lived approximately eight blocks apart and shared joint custody of D.C. Physical custody alternated weekly, and exchange of custody occurred on Fridays.

[4] On March 26, 2018, Father filed a petition to modify parenting time and custody. In his motion, Father requested sole physical custody due to changes in D.C.'s school performance and Mother's lack of communication with Father. The court held a hearing on Father's petition on April 25, 2018. Because all evidence could not be heard in the allotted time, the hearing was continued.

[5] On June 8, 2018, Mother filed a counter-petition to modify custody. Mother requested sole physical custody of D.C. because Father refused to communicate with her and was "impossible to co-parent with." Appellant's App. p. 29. And Mother argued a change in circumstances because she was no longer employed and was able to stay home full time with D.C. Approximately two weeks later, Mother also filed a notice of intent to relocate because her fiancé's new

employment required a move to the Lafayette, Indiana area. Father objected to Mother's request to relocate D.C.

[6] A hearing was held on all pending petitions and motions on August 28, 2018. The evidence presented at the hearing established the acrimonious nature of Mother and Father's relationship. Both parents testified to a lack of communication, including the fact that Mother had blocked text messages from Father for a period of time. Father argued that D.C.'s school performance suffered during the weeks that he stayed at Mother's home. Mother alleged that Father interfered with her parenting time and called her foul names in front of their child. Mother and her fiancé also testified that he had obtained new employment with higher pay, but his new job required a move to the Lafayette area.[1]

[7] On August 29, 2018, the trial court issued an order granting Mother's request to relocate, and specifically the court's order provides in pertinent part:

> The parties are the parents of a son, [D.C.], age eight (8) years. Custody has been joint and the parents have alternated weeks as an equal time share with their son.
>
> [D.C.] has had some behavioral and scholastic challenges owing to a diagnosis as being ADHD. A combination of medication and therapy has improved both his behavior and his academic performance.

---

[1] Mother and her fiancé planned to marry in September 2018. Tr. p. 112.

Both parents have talents they contribute to their son's upbringing; however, both freely acknowledge, and the court concludes, that they have considerable difficulty in communicating and cooperating as co-parents. Mother is in a long-term relationship which is scheduled to result in marriage in less than a month. She is expecting a child with her anticipated husband. His work will require a relocation closer to Lafayette, Indiana, because of a work requirement that he reside within an area which precludes he and Mother remaining in Elwood. Although Mother had worked full time previously, her current plan is to remain at home with her oldest daughter, [D.C.], and her expected child.

Father works extended hours during good weather and has limited time at home during the week. Step-mother has been involved beneficially in [D.C.'s] life.

No parent is perfect; and, here, neither parent is inadequate. Together, they have done a creditable job of raising their son despite their difficulties with each other. The court notes that the difficulties the parties have will likely exist in their parental relationship no matter what the custody format is.

The parties shall continue to share joint legal and physical custody and shall have the obligation to consult one another regarding significant decisions concerning their son. Mother's motives for relocating closer to the Lafayette area are appropriate and the court authorizes that relocation in light of this order. The court has concern about [D.C.'s] educational consistency, especially in light of his past difficulties. Thus, [D.C.] will remain in his current school district for the first semester of the 2018-2019 school year.

For now, the parties will continue their alternating week schedule with [D.C.] until Mother moves. Following Mother's relocation, [D.C.] will live principally with Father for the remainder of the first semester of the current school year and Mother will have not less than Indiana Parenting Time Guidelines together with the

same provisions for her to have "additional time" as are set forth below for Father. With the start of the second semester, Mother shall have primary physical custody and Father shall have such time as the parties may agree. In the event of disagreement, Father shall have not less than Indiana Parenting Time Guidelines together with the following additional time:

In February, April, and September of each year, Father shall have an additional weekend, which shall be the last full weekend (meaning both Saturday and Sunday falling within the same calendar month) which would not already be his regular weekend. In December of each year, Father shall have an additional weekend which shall be the first full weekend which would not already be his weekend.

Each party shall have reasonable telephone, text, e-mail, and/or video chat with their son while he is with the other parent.

Appellant's App. pp. 37–39.

[8] Two days later, the trial court issued an order concerning the tax exemption for D.C. The court awarded the tax exemption to Father. However, the court also ordered, "[a]t such time as Mother returns to full time employment, the parties shall alternate the exemption with Mother being entitled to claim the exemption for the first year that she has been employed full time for at least nine (9) months of the year." *Id.* at 43.

[9] Father now appeals.

## Standard of Review

[10] Initially, we observe that Mother failed to file an Appellee's brief, and we will not undertake the burden of developing arguments for her. *Jenkins v. Jenkins*, 17

N.E.3d 350, 351 (Ind. Ct. App. 2014). Instead, we apply a less stringent standard of review and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). However, to determine whether reversal is required, we are still obligated to correctly apply the law to the facts in the record. *Jenkins*, 17 N.E.3d at 352.

[11] Importantly, our supreme court has expressed a preference for granting latitude and deference to our trial judges in family law matters. *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016). "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.*" Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id*.

[12] Modifications of child custody, parenting time, and child support are all reviewed for an abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). We neither reweigh the evidence nor assess witness credibility. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010). Rather, we consider only the evidence and inferences most favorable to the trial court's judgment. *Id*. "'On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion

contended for by appellant before there is a basis for reversal.'" *Steele-Giri*, 51 N.E.2d at 124 (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

## Custody Modification and Relocation

[13] Father argues that the trial court abused its discretion when it granted Mother's request to relocate and modified custody of D.C. In addition to Mother's petition to relocate, both parties filed motions to modify custody.

[14] Indiana Code section 31-17-2-21 provides in pertinent part that a trial court "may not modify a child custody order unless"

> (1) the modification is in the best interests of the child; and
>
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter.

[15] The factors the court must consider, which are listed in Indiana Code section 31-17-2-8 include

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;
>>
>> (B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

[16] Even where there has not been a substantial change in one or more of the statutory factors affecting the best interests of the child set forth in section 31-17-2-8, a change in custody may be ordered due to relocation of a parent. *In re Paternity of J.J.*, 911 N.E.2d 725, 729 (Ind. Ct. App. 2009) (citing *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008)). Mother filed a notice of intent to move as required by Indiana Code section 31-17-2.2-1. Father objected to prevent D.C.'s relocation. *See* Ind. Code §§ 31-17-2.2-1(b); 31-17-2.2-5(a). Therefore, Mother bore the burden of proving that "the proposed relocation is made in good faith and for a legitimate reason." Ind. Code § 31-17-2.2-5(c). If the relocating parent shows good faith and a legitimate reason, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." Ind. Code § 31-17-2.2-5(d). Moreover,

> The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

    (A) relocating individual for seeking relocation; and

    (B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 317-17-2.2-1(b).

[17] Father argues that the trial court "failed to address the appropriate factors in a modification proceeding and a relocation of a parent." Appellant's Br. at 19. The trial court is required to consider all the factors in section 31-17-2.2-1(b). *In re Marriage of Harpenau*, 17 N.E.3d 342, 347 (Ind. Ct. App. 2014). The relocation statutes do not require findings, but there must be evidence in the record on the factors. *Wolljung v. Sidell*, 891 N.E.2d 1109, 1113 (Ind. Ct. App. 2008); *see Harpenau*, 17 N.E.3d at 347 ("Although the trial court did not make specific findings about each factor, our review of the record shows that there

was sufficient evidence of each relevant factor to support the trial court's decision.")

[18] The trial court heard evidence on each enumerated factor. Mother testified that her fiancé obtained new employment that required him to live within thirty minutes of Lafayette. They intend to live in Mulberry, Indiana, which is twenty minutes east of Lafayette. Tr. pp. 111–12. The travel time between Mulberry and Elwood is approximately one hour. Mother, who was pregnant on the date of the hearing, intends to stay at home full time with the children.

[19] The distance between the two cities is relatively minimal. However, the parties shared equal parenting time with D.C. prior to the order allowing relocation. Therefore, Father's parenting time with D.C. has decreased. Consequently, the trial court awarded Father four additional weekends per year. Moreover, the evidence supports the trial court's finding that due to Father's work schedule, Father was unable to spend significant time with D.C. during the week, and D.C.'s step-mother was his main caregiver during Father's parenting time.

[20] Father and D.C. share a strong bond, and the evidence suggests that the relocation will not affect their relationship. Father will still share significant parenting time with D.C. Father did not present any evidence that exercising parenting time with D.C. after the relocation would cause hardship, financial or otherwise.

[21] Both parties presented evidence that the parties' relationship is acrimonious and they lack good communication skills. However, neither party has prevented the

other from communicating with D.C. And there is no evidence that Mother has engaged in an established pattern of conduct to thwart Father's contact with D.C.[2]

[22] Father cites primarily to the communication issues between the parties, D.C.'s school performance, and his strong bond with D.C. to support his argument that relocation is not in D.C.'s best interests. Further, Father argues that this evidence supported his own petition to modify custody.

[23] D.C. struggled in kindergarten and repeated the grade. The evidence in the record establishes that Father and step-mother played a key role in helping D.C. improve his performance in school. D.C. had trouble focusing in school, and he was placed on medication shortly before the hearing in this case. The medication has made a significant, positive difference in D.C.'s school performance, and both Mother and Father support continuing D.C. on the medication. Moreover, D.C. has a strong bond with both of his parents, and the communication issues between the parties have not interfered with their respective relationships with D.C.

[24] For all of these reasons, we affirm the trial court's order granting Mother's request to relocate.

---

[2] The parties both testified that the other parent attempted to prevent contact with D.C. on certain limited occasions, but those circumstances generally involved sporadic school events such as a field trip or class party. This evidence did not establish a pattern of behavior to attempt to thwart contact with the child.

# Tax Exemption

[25] Father also argues that the trial court erred when it ordered that Mother and Father will alternate the tax exemption for D.C. if or when Mother "returns to full time employment." *See* Appellant's App. p. 43. Father observes that the trial court is required to consider statutorily enumerated factors to determine which parent may claim the child has a dependent.

[26] First, we observe that for tax exemption purposes, "[t]he federal tax code automatically grants to a custodial parent the dependency exemption for a child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year." *Bogner v. Bogner*, 29 N.E.3d 733, 744 (Ind. 2015) (citations omitted). The trial court may order the custodial parent to waive the dependency tax exemption. *See* Ind. Child Supp. Guideline 9 ("Judges and practitioners should be aware that under current law the court cannot award an exemption to a parent, but the court may order a parent to release or sign over the exemption for one or more of the children to the other parent pursuant to Internal Revenue Code § 152(e). To effect this release, the parent releasing the exemption must sign and deliver to the other parent I.R.S. Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents.").

[27] Indiana Code section 31-16-6-1.5(b) provides that the trial court "shall" consider the following factors to determine which parent may claim the child as a dependent:

(1) The value of claiming the child as a dependent at the marginal tax rate of each parent.

(2) The income of each parent.

(3) The age of the child or children and the number of years that the child or children could be claimed as a dependent or dependents.

(4) Each parent's percentage of the costs of supporting the child or children.

(5) If applicable, the financial aid benefit for postsecondary education for the child or children.

(6) If applicable, the financial burden each parent assumed under the property settlement in a dissolution proceeding.

(7) Any other relevant factors.

*See also* Child Supp. G. 9.

[28] The trial court erred when it ordered the parties to alternate the tax exemption if Mother rejoins the workforce full time. Because Mother is not currently employed, and has no plans for future employment, the trial court could not have considered the factors enumerated in Indiana Code 31-16-6-1.5 or Child Support Guideline 9 when it ordered the parties to alternate the tax exemption in the future when Mother rejoins the workforce.[3] If Mother obtains full-time

---

[3] Father also argues that the trial court erred when it ordered Mother to "execute IRS Form 8332 as necessary to effectuate this order." We agree that for the 2018 tax year, it was not necessary for Mother to execute Form 8332 because Father was D.C.'s custodial parent for that year as defined in 26 U.S.C. 152(e)(4)(A). To the extent that the trial court's order required Mother to execute the form *as necessary* for Father to claim the exemption in future years, the order is appropriate.

employment at some point in the future, the trial court must consider the parties' circumstances and the statutory and Guideline 9 factors at that time. Therefore, we reverse the trial court's August 30, 2018 order concerning the tax exemption and remand for proceedings consistent with this opinion.

## Conclusion

[29] The trial court did not abuse its discretion when it granted Mother's request to relocate. However, we reverse the trial court's August 30, 2018 order concerning the tax exemption and remand for proceedings consistent with this opinion.

[30] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

Vaidik, C.J., and Crone, J., concur.