

FILED

Sep 22 2020, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan H. Babb
Timothy J. O'Hara
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Gregory K. Blanford
South Bend, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tiffani L. (Freeman) Lynn,<br>*Appellant-Respondent,*<br><br>v.<br><br>Andrew S. Freeman,<br>*Appellee-Petitioner* | September 22, 2020<br><br>Court of Appeals Case No.<br>19A-DC-2014<br><br>Appeal from the St. Joseph Circuit<br>Court<br><br>The Honorable John E. Broden,<br>Judge<br><br>The Honorable William L. Wilson,<br>Magistrate<br><br>Trial Court Cause No.<br>71C01-1701-DC-68 |

**Altice, Judge.**

[1]     Tiffani L. (Freeman) Lynn (Mother) and Andrew S. Freeman (Father) entered into a Mediated Settlement Agreement (the Dissolution Agreement), dissolving their marriage and, among other things, settling custody and parenting time issues related to their minor son M.F. (Child). Pursuant to the Dissolution Agreement, which was accepted by the trial court, the parties shared joint legal custody, Mother had primary physical custody, and Father had parenting time exceeding that provided in the Indiana Parenting Time Guidelines (the Guidelines).

[2]     Four months after the Dissolution Agreement, Mother filed a notice of intent to move about eighty miles away. Father filed a timely objection to the relocation and filed a motion to modify custody. Following a hearing that spanned four days and had six witnesses, the trial court issued a lengthy order denying Mother's request to relocate on two grounds. First, the court determined that although the proposed relocation was for a legitimate purpose, it was not made in good faith. Second, and alternatively, the court found that the proposed relocation would not be in Child's best interests. The court expressly made no determination regarding Father's motion to modify custody.

[3]     On appeal, Mother contends that the trial court misinterpreted Ind. Code § 31-17-2.2-5(e)'s requirement that she establish "the proposed relocation is made in good faith and for a legitimate reason." She also contends that the trial court's determination regarding Child's best interests is "legally flawed" and not based

on a "fair and correct legal analysis" of the factors listed in I.C. § 31-17-2.2-2.5(c). *Appellant's Brief* at 10.

[4] We affirm.

## Facts & Procedural History

[5] Mother and Father's six-year marriage was dissolved on December 15, 2017, about a year after Father filed for dissolution. Child, born in May 2012, was five years old at the time of dissolution. Mother was pregnant with Matthew Lynn's (Lynn) child, with whom she had been in a relationship since March 2017.[1]

[6] The Dissolution Agreement, which Mother and Father entered into during a lengthy mediation session, constituted a comprehensive settlement agreement. With respect to custody of Child, it provided for the parties to share temporary joint legal custody,[2] Mother to have primary physical custody, and Father to have parenting time beyond that provided in the Guidelines. Specifically, with respect to regular parenting time, the Dissolution Agreement provided that Father would have Child during the school year on every Wednesday for an

---

[1] Mother also has an older son, O.G., from a prior relationship.

[2] Joint legal custody was a temporary provision, as the Dissolution Agreement required Mother and Father to complete high conflict counseling with Roxi Wax at Lincoln Therapeutic Group with a completion target of April 1, 2018. Thereafter, the issue of whether joint legal custody would continue was set for a review hearing on April 12, 2018, with the assistance of an anticipated final report from Wax. The parties did not successfully complete counseling, which ended in March when Mother indicated that she simply could not trust Father. The hearing contemplated by the Dissolution Agreement does not appear to have been held.

overnight from after school until the beginning of school the next day and on alternating weekends from immediately after school on Friday until he took Child to school Monday morning. The Dissolution Agreement expressly provided what schools Child shall attend from elementary through high school.

[7] In January 2018, Lynn moved into Mother's home in Granger and proposed marriage to her. They were married on February 16, 2018. Lynn is a certified public accountant specializing in mergers and acquisitions consulting. At the time he and Mother began their relationship, he was employed in South Bend by Crowe Horwath, an international accounting firm. He ended his tenure with this company in August 2017, when his practice group relocated to Florida. Lynn initially searched for employment opportunities in the South Bend area but eventually had to expand his search by early 2018. In April 2018, Lynn accepted a position with BDO in Chicago, another international accounting firm, and began commuting for work.

[8] On April 17, 2018, Mother filed her notice of intent to move residence (the Notice), in which she noted Lynn's employment in Chicago. Mother indicated that their new residence had yet to be determined but that the family intended to move to the White Oak area of Munster. Regarding Father's regular parenting time, the Notice provided:

> [Mother] agrees to provide either physical transportation or the expense of transportation to comply with the previous agreed upon parenting time schedule, which said schedule will necessarily need to be modified to a minor extent …. To be specific, [Mother] agrees to provide transportation or the expense

for the every other weekend visits. [Mother] will bring [Child] to Granger after school on Friday and pick him up on Sunday evening at 7:30 p.m. In the mid-week, [Mother] proposes that Father shall have his parenting time in Munster after school until 7:30 p.m.

*Appellant's Appendix* at 45. Two days later, Father filed an objection to the Notice, as well as a petition to modify custody.

[9] On May 2, 2018, the parties entered into a stipulated order, agreeing to have Michael Jenuwine, Ph.D., J.D. perform an evaluation and provide recommendations to the trial court regarding the issues of legal custody, physical custody, and parenting time. They also agreed that neither party would relocate with Child away from St. Joseph County until such time as the custody evaluation was concluded and the trial court ruled on the matter.

[10] Dr. Jenuwine filed his thirty-four-page forensic psychological evaluation (the Evaluation) with the trial court on December 7, 2018. At the conclusion of the Evaluation, Dr. Jenuwine made the following recommendations:

> It is recommended that [Father] and [Mother] set aside their personal differences and attempt to meet [Child's] developmental needs as described above. Research suggests that children whose parents continue in conflict following custody litigation are at a high risk for emotional disorders and poor school performance…. Father and Mother have created a conflicted binuclear family in which [Child] is caught in the middle.
>
> The co-parental relationship between divorced parents is something that is constructed, and not something that simply can be carried over from pre-separation patterns. In order for Mother

and Father to effectively negotiate with each other in making decisions on behalf of [Child], they need to step out of their current conflict and begin working collaboratively on forming a positive co-parenting relationship. [They] need to move away from a litigation/battle mode and to begin to develop a new foundation of trust towards a common goal of [Child's] future. It may be beneficial for Mother and Father to be encouraged to return to counseling targeted at parents engaged in conflictual relationships….

At this time, [Child's] relocation to Munster would not be in his best interests. As outlined above, numerous risk factors increase the likelihood that such a move would negatively impact [Child]. Neither [Father] nor [Mother] have provided evidence to suggest that they have proactively taken measures to escape the current adversarial stance toward child custody with each other, pursued services to improve co-parent communication, honestly encouraged a positive relationship between [Child] and the other parent, or worked to actively resolve parenting conflicts rather than engaging outside individuals to bolster their positions. If [Mother] moves to Munster with [Child] at this time, multiple risk factors make it more likely that [Child's] relationship with his father will suffer and deteriorate, and that his long-term emotional well-being may be jeopardized.

At this time, the evaluator reserves any further recommendations concerning the petitioned change of custody until such time that the court or parties specifically requests them.

*Exhibits Vol. 5* at 36-37.

[11]   Unsatisfied with the Evaluation, Mother asked two other psychologists to review it. In February 2019, Jeff Burnett, Ph.D., offered some critiques but ultimately reported to Mother's counsel that he believed "Dr. Jenuwine

conducted a thorough evaluation" and that the Evaluation met relevant professional standards and provided sufficient data to support Dr. Jenuwine's conclusion that relocation would not be in Child's best interests. *Id*. at 38. Dr. Burnett opined that this conclusion was not "too anecdotal and speculative." *Id*. In May 2019, Warren Sibilla, Jr., Ph.D., provided Mother's counsel with a detailed written critique of the Evaluation, noting several perceived errors or omissions.

[12] An evidentiary hearing was held over four days, commencing on July 22, 2019, and concluding on August 1, 2019. The trial court, without objection from either party, bifurcated the hearing and indicated that it would first determine whether to permit Mother's proposed relocation and then, based on that ruling, leave it to the parties to determine whether to continue to pursue custody modification.

[13] The witnesses at the hearing included Mother, Father, Lynn, Dr. Jenuwine, Dr. Sibilla, and Dr. Burnett, and Wax's deposition was admitted into evidence along with other evidentiary exhibits. Dr. Jenuwine testified in detail regarding the factors he considered in reaching his opinion that relocation was not in Child's best interests, an opinion that he still held at the time of trial. Dr. Jenuwine explained that he only made a recommendation regarding relocation – not custody modification – because Mother had indicated that she would not move if the trial court did not allow her to relocate with Child. Mother later testified, however, that she was no longer sure her family could remain local regardless of the court's decision regarding relocation. Mother indicated that

she and Lynn could instead relocate to the Chesterton/Valparaiso area, which was about sixty miles away rather than eighty. Mother presented a detailed parenting time proposal that significantly reduced Father's overnights, but she also testified that she was willing to keep parenting time unchanged and provide transportation on Monday and Thursday mornings, though she felt that might not be best for Child. Father expressed doubt regarding whether Mother would actually follow through with her proposals, including providing regular transportation with her growing family,[3] and he detailed past efforts by Mother to thwart his parenting time.

[14] On August 28, 2019, the trial court entered a lengthy order denying Mother's request to relocate with Child and indicating that Father's request to modify custody remained pending, with its future possibly depending on Mother's decision whether to relocate without Child. Mother now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### *Standard of Review*

[15] While neither party requested special findings pursuant to Ind. Trial Rule 52(A), the trial court's order contained findings of fact and conclusions thereon. Under such circumstances, the sua sponte findings control only as to the issues

---

[3] Mother was pregnant with her and Lynn's second child at the time of the hearing.

they cover and are reviewed for clear error, and a general judgment standard applies to any issues upon which there are no findings. *Gold v. Weather*, 14 N.E.3d 836, 841 (Ind. Ct. App. 2014), *trans. denied*. We may affirm a general judgment entered with partial findings on any theory supported by the evidence adduced at trial. *Id*.

[16] On review, we will consider only the evidence most favorable to the trial court's judgment and will not reweigh evidence or reassess the credibility of witnesses. *Id*. Indeed, our Supreme Court has made clear that "in family law matters, trial courts are afforded considerable deference." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012). This is because

> we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 210 N.E.2d 850, 852 (1965) (footnote omitted)); *see also Gold*, 14 N.E.3d at 841 ("We accord this deference because trial courts directly interact with the parties and are thus in a superior position 'to assess credibility and character through both factual testimony and intuitive discernment.'") (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)).

*Relocation Statutes*

[17] I.C. Chap. 31-17-2.2 governs the proposed relocation of a parent subject to parenting time or custody orders or proceedings. The statutory provisions were substantially amended in 2019 shortly before the evidentiary hearing in this case. *See* P.L. 186-2019, §§ 10 through 15 (effective July 1, 2019). We will refer to the applicable amended statutes.

[18] Under certain circumstances, such as those present in this case, a parent intending to move residences must file a notice of that intention. *See* I.C. § 31-17-2.2-1 (a) and (b); *see also* I.C. § 31-17-2.2-3 (setting out required contents of the notice). The nonrelocating parent may respond in one of three ways: (1) state no objection; (2) state no objection to the relocation but file a motion requesting modification of custody, parenting time, or child support and a request for a hearing; or (3) state an objection to the relocation, file a motion requesting a temporary or permanent order preventing the relocation of the child *and* for a modification of custody, parenting time, or child support as a result of relocation, and request a hearing. *See* I.C. § 31-17-2.2-5(a). Here, Father proceeded under the third option.

[19] On the request of a party, the trial court is required to "hold a full evidentiary hearing to allow or restrain the relocation of the child and to review and modify, if appropriate, a custody order, parenting time order, [] or child support order." I.C. § 31-17-2.2-5(d); *see also* I.C. § 31-17-2.2-5-1(c). At this hearing, the relocating parent has the initial burden to establish that "the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(e). If that burden is met, the burden then shifts to the nonrelocating parent to

show that the proposed relocation is not in the best interests of the child.  I.C. § 31-17-2.2-5(f).

[20] In this case, the trial court determined both that Mother failed to establish that the proposed relocation was made in good faith and that, in any event, Father established that the proposed relocation was not in Child's best interests.  On appeal, Mother challenges both of these bases for the trial court's denial of her relocation with Child.  We will address each in turn.

*Mother's Burden*

[21] Pursuant to I.C. § 31-17-2.2-5(e) (Section 5(e)), Mother had the initial burden at the evidentiary hearing of establishing that the proposed relocation was "made in good faith and for a legitimate reason."  The trial court determined that although made for a legitimate purpose – Lynn's new employment,[4] the proposed relocation was not made in good faith.

[22] With respect to its good faith determination, the trial court began by discussing the timing of the Notice in relation to the Dissolution Agreement and other events and described the timing as "awfully convenient."  *Appellant's Appendix* at 78.  The trial court impliedly agreed with Father's suggestion that Mother may have entered into the Dissolution Agreement with no intention of staying in the South Bend area for long.  Next, the court noted the "almost unheard of"

---

[4] In this regard, the trial court recognized the unpleasant commute between the South Bend area and Chicago, as well as the negative effect of daily separation on Mother and Lynn's marriage.

number of motions filed or actions taken by Mother where she attempted to change Father's parenting time in some fashion. *Id*. at 79. The trial court continued:

> On its face, [the list of motions] reveals that Mother and Father are prone to disagree about their parenting time schedule …. Digging deeper, however, reveals some evidence that may shed light on Mother's motivations. Specifically, in July of 2017, Mother filed her renewed motion to have Father's parenting time supervised. The basis for this motion was that on the July 4, 2017 holiday, Father and [Child] went to a gathering at a home with then five-year-old [Child] was able to ignite some fireworks while other adults were around. Mother knew this because she had gone so far as to hire a private investigator to follow Father and [Child] …. The Court held an evidentiary hearing on Mother's renewed motion, viewed the video recording of the event in question, and denied Mother's motion. The Court was bothered then (and is bothered today) by Mother's mindset that allowed her to believe hiring a private investigator was a good idea…. The Court cannot believe that Mother hired the investigator for any reason other than to try to place tight limits on Father's ability to have a relationship with [Child]….
>
> Although not raised by Father, the Court is concerned about Mother's repeated attacks on Father's choices with regard to [Child]. Specifically, Mother believes that Father allows [Child] to participate in unsafe activities such as snowmobiling or riding a small motorcycle. Mother spent a portion of her case criticizing Dr. Jenuwine's report for not taking these activities into consideration. The problem with Mother's argument on this point is that even accepting that her safety concerns are legitimate, they will not be eliminated by the proposed relocation…. That Mother would spend so much time criticizing Father's choices (which are his to make, no matter how unwise they may seem to the Court or Mother) further illustrates that

Mother desires to control Father's influence on [Child] rather than nurture the father-son relationship.

Mother attempts to demonstrate good faith by pointing to her proposal that she bear the burden of providing the transportation so that Father's parenting time schedule can continue unchanged, along with her willingness to pay for hotel accommodations …. "On paper," Mother's ideas have appeal. When the Court considers the practicality of Mother's proposals, however, doubts arise. As an example, Mother proposes that Father could keep his Wednesday overnights by picking up [Child] after school in his new community. In turn, Mother would pick up [Child] from Father's home on Thursday morning and get him to school. This would require Mother to pack up both her one-year-old and new infant for a one-hour drive to St. Joseph County, followed by a one-hour drive back to her chosen community. Regardless of Mother's good intentions, the Court has doubts that Mother's willingness will stand the test of time – not to mention inclement winter weather in Northern Indiana.

When considering Mother's credibility as a witness, her court filings, and the timeline of events leading up to the notice of intent to relocate, the Court cannot avoid having serious doubts about Mother's good intentions. Throughout this case, Mother has revealed a sense of entitlement to dictate how Father will exercise his relationship with [Child]. The deposition of Rozi Wax presents an interesting illustration of this mindset: Mother and Father were working with Ms. Wax on reaching an agreement concerning [Child's] attendance at his taekwondo classes that occurred during Mother's parenting time. … At the last minute, however, Mother refused to commit to the plan, explaining only that she doesn't "trust" Father. The Court cannot understand what Mother's lack of trust has to do with a plan for getting [Child] to his classes. After this breakdown, the parties did not work further with Ms. Wax. This incident bolsters the Court's conclusions about Mother's world view. Mother's defenders will be more than likely to say that the Court

has misinterpreted Mother's intentions. This might be so if the Court was looking at only one item. When the Court looks at the entire picture, however, there is sufficient evidence to suggest that the Court is not misinterpreting her intentions.

Because of events surrounding Mother's efforts to limit Father's parenting time in some fashion along with the events leading up to the notice of intent to relocate, combined with the Court's doubts as to the good intentions on Mother's part, the Court concludes that Mother's proposed relocation is not made in good faith.

*Id.* at 80-82 (footnotes omitted).

[23]     On appeal, Mother makes much of the fact that the trial court parsed her burden into two requirements – good faith and a legitimate reason. She urges that Section 5(e)'s requirement that "the proposed relocation is made in good faith and for a legitimate reason" is a "unitary standard that is satisfied when the evidence establishes that a parent seeks to relocate in order to live closer to family members, for financial reasons, or for employment opportunities." *Appellant's Brief* at 9-10.

[24]     In the vast majority of cases, the legitimacy of the reason for a proposed relocation and the good faith behind it will go hand in hand and entail no separate analysis. We do not agree with Mother, however, that a trial court is barred from analyzing them separately in appropriate cases. This ensures, for example, that a parent cannot assert an objectively legitimate reason for a proposed move solely as a pretext for distancing a child from the nonrelocating parent. *See Gold*, 14 N.E.3d at 842 (observing that "our court has generally

required that the moving parent demonstrate an objective basis – that is, "more than a mere pretext" – for relocating"); *T.L. v. J.L.,* 950 N.E.2d 779, 787 (Ind. Ct. App. 2011) (noting that "the statute requires that a legitimate reason be objectively shown, and by requiring that the relocation be in good faith, demands that the objective reason be more than a mere pretext"). That said, we do not agree with the trial court's good faith analysis here.

[25] "It is commonly understood in today's society that individuals move in order to live closer to family members, for financial reasons, and for employment opportunities." *Gold*, 14 N.E.3d at 842. We have inferred that these and similar reasons are what the legislature intended in requiring that relocations be proposed in good faith and for legitimate reasons. *See id.*; *T.L.,* 950 N.E.2d at 788. Here, Mother proposed objectively legitimate reasons for the relocating. That is, her husband is employed in Chicago, which requires him to either make an arduous daily commute or stay in Chicago during the work week, keeping him away from his young family and causing stress in their marriage. The trial court properly found that this was a legitimate reason for relocating.

[26] Further, the trial court did not discount the evidence related to Lynn's lengthy job search and ultimate employment in Chicago. Indeed, the trial court recognized the "untenable situation" faced by the couple due to Lynn's employment. *Appellant's Appendix* at 84. We agree with Mother that the circumstances here do not support the trial court's determination that her proposed relocation was made in bad faith. While the evidence supports a finding that Mother might have acted in bad faith during the mediation that

resulted in the Dissolution Agreement and that she has actively sought to hinder Father's relationship with Child, there is no evidence that the reasons she provided for needing to move were merely pretextual. *Cf. T.L.,* 950 N.E.2d at 787 ("Indiana Code section 31-17-2.2-5 does not by its terms require that desire for distance from a former spouse form no part of the subjective motivation for relocation.").

[27] As we have previously observed, if the requirement of a legitimate and good faith reason posed an inordinately high bar for a relocating parent to meet, it could too often prevent trial courts from reaching and appropriately deciding the dispute based on the best interests of the child. *Id.* at 788. Except where the stated reasons for relocation are solely pretextual (or illegitimate on their face), a rather low bar in application, we prefer for the resolution of relocation disputes to turn on a judicial determination of the best interests of the child. *See id.* Thus, we conclude that the trial court's detailed analysis, as set out above, is more applicable to the best interest inquiry, which we examine next. *See id.* (holding that trial court erred in concluding that Mother's proposed relocation was not in good faith and for a legitimate reason but noting, "our inquiry does not end there, because the trial court also determined that relocation was not in the children's best interests," and ultimately affirming on that ground); *see also H.H. v. A.A.*, 3 N.E.3d 30, 36 (Ind. Ct. App. 2014) (same).

*Father's Burden*

[28] Mother also claims that the trial court erred in determining that the requested relocation was not in Child's best interests. She suggests that the trial court's legal analysis is flawed because its consideration of the best interest factors listed in I.C. § 31-17-2.2-1 did not take into account whether to modify the custody order. Further, she asserts that Dr. Jenuwine never bothered to consider Mother's parenting time proposal when making his recommendation regarding Child's best interests.

[29] Initially, we observe that the parties acquiesced below to the trial court's suggestion that they first litigate the issue of whether Mother should be permitted to relocate with Child. Mother, therefore, cannot be heard to complain that the trial court did not consider Father's motion to modify the custody order along with her request to relocate.

[30] I.C. § 31-17-2.2-1(c) (Section 1(c)) provides:

> (c) Upon motion of a party, the court shall set the matter for a hearing to allow or restrain the relocation of a child and to review and modify, if appropriate, a custody order, parenting time order, … or child support order. … The court shall take into account the following in determining whether to modify a custody order, parenting time order, … or child support order:
>
> > (1) The distance involved in the proposed change of residence.
> >
> > (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time ….
> >
> > (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable

parenting time … arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

The reference to other factors includes those factors applicable in an initial custody determination as set out in I.C. § 31-17-2-8, such as, among other things, the child's age and sex, the child's relationship with parents, siblings, and others, and the child's adjustment to home, school, and the community. *See D.C.*, 977 N.E.2d at 954; *In re Marriage of Harpenau*, 17 N.E.3d 342, 346 (Ind. Ct. App. 2014).

[31] Although Section 1(c) references the best interest factors in relation to determining whether to modify custody or parenting time, our courts have indicated that the factors also apply to the basic determination of whether relocation is in the child's best interests. *See H.H.*, 3 N.E.3d at 36-39 (applying the statutory factors to a decision solely regarding whether to permit relocation); *T.L.,* 950 N.E.2d at 789-90 (same); *see also D.C.*, 977 N.E.2d at 954 ("court must weigh the following factors [set out in Section 1(c)] in considering

a proposed relocation"); *Baxendale v. Raich*, 878 N.E.2d 1252, 1256 n. 5 (Ind. 2008) (observing that regardless of whether the order was reviewed as on a petition to modify or a petition to prevent relocation, the result would be the same "because when a relocation is made in good faith, … both analyses ultimately turn on the 'best interests of the child'").[5] "In general, the trial court must consider the financial impact of relocation on the affected parties and the motivation for the relocation in addition to the effects on the child, parents, and others, such as siblings or other persons who may significantly affect the children's best interests, as relevant to every change of custody." *Dixon v. Dixon*, 982 N.E.2d 24, 26 (Ind. Ct. App. 2013).

[32] In determining that relocation was not in Child's best interests, the trial court provided extensive findings and analysis, much of which we will summarize. The court first found that the distance involved was not insignificant and would require making a two-hour round trip for each drop off and pickup for parenting time. While Mother offered to bear the majority of the traveling, thus reducing the hardship on Father and making parenting time more feasible, the trial court questioned the practicality of her proposal and whether her willingness would stand the test of time. Specifically, the court noted that Mother will have an

---

[5] In *Gilbert v. Gilbert*, 7 N.E.3d 316 (Ind. Ct. App. 2014), the majority refused to apply the factors specifically set out in the relocation statute (now Section 1(c)) and instead indicated that the general best interest factors of I.C. § 31-17-2-8 applied because the father's sole contention on appeal was that the trial court abused its discretion by granting the mother permission to relocate. *Gilbert* appears to be an outlier in this respect. Moreover, we observe that Mother and Father both relied on Section 1(c) when presenting evidence and arguments to the trial court.

infant and another young child to care for during these long drives and that winter weather in the area can be particularly inclement. Additionally, as set out in the previous section, the trial court went to great lengths to detail Mother's history of efforts to limit and control Father's relationship with Child, a factor that appeared significantly weighty to the trial court.

[33] Regarding more general considerations, the trial court addressed Child's adjustment to his homes, school, churches, and community in the South Bend area, his active involvement in taekwondo and outdoor activities with Father, and Child's extended family members on both sides that live in the South Bend area, whom he would likely not see as often if he relocated. The court noted, however, that if Child relocated, he would undoubtedly adjust just fine to many of these changes and he would benefit from having more time with Lynn.

[34] The trial court then turned back to considering the effects of relocation on Child's relationship with Father:

> [T]he Court is concerned that even a relatively short distance will have a negative effect on [Child's] relationship with Father. Notably, Mother did not offer any expert evidence that [Child's] relationship with Father would be improved or unaffected. At best, Mother was able to raise questions about whether Dr. Jenuwine considered the concerns Mother reported to him about Father's history and unsafe recreational activities with [Child]. Dr. Jenuwine, however, testified that he did consider these various items but that he concluded they were not relevant to the facts of this case.

The Court also believes that the likely negative effects on the relationship between [Child] and Father are not outweighed by the benefits to Mother's family that would result from the proposed relocation. As noted above, the Court understands that the current commuting that Mr. Lynn undertakes is a real grind, and that the efforts made to reduce the grinding commute each week (renting a condominium in Chicago so that Mr. Lynn can spend a few nights each week there) also have a negative effect on Mr. Lynn and Mother's nuclear family. This case, however, is not about what makes life easier for the adults in [Child's] life. Ultimately, the case is about whether the proposed relocation is in [Child's] best interests. With the credible evidence presented to the Court, the Court concludes that Father has met his burden of showing that the proposed relocation is not in [Child's] best interests.

*Appellant's Appendix* at 84.

[35] Contrary to Mother's rather bald assertion, the trial court's consideration of the factors relevant to the best interest determination in this case was not "half-baked." *Appellant's Reply Brief* at 18. The trial court was not required to make specific findings relating to each statutory factor. *See H.H.*, 3 N.E.3d at 36. Moreover, with respect to Mother's concerns regarding Dr. Jenuwine's failure to consider certain circumstances, we reiterate that the trial court expressly considered Mother's proposal regarding parenting time and transportation and indicated a disinclination to believe that her offer would stand the test of time.[6]

---

[6] In its order, the trial court stated that although the Evaluation by Dr. Jenuwine and the critiques by Drs. Burnett and Sibilla were helpful, "ultimately the Court's conclusion [was] based largely on the facts of this case and less on the psychologists' opinions." *Appellant's Appendix* at 77.

[36] Applying our standard of review and affording the trial court the considerable deference due in family law matters, the issue is not whether we would have made the same decision as the trial court. *See D.C.*, 977 N.E.2d at 957-58; *T.L.*, 950 N.E.2d at 790. Here, the trial court's best interest determination was well supported by the court's findings and the evidence presented below, and neither the judgment nor the findings were clearly erroneous. Accordingly, we must affirm.

[37] Judgment affirmed.

Riley, J. and May, J., concur.